JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
NANCI E. NISHIMURA (SBN 152621)
nnishimura@cpmlegal.com
MARK C. MOLUMPHY (SBN 168009)
mmolumphy@cpmlegal.com
KEVIN P. O'BRIEN (SBN 215148)
kobrien@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Defendants Charles B. Johnson
and Franklin Resources, Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **ANTHONY P. MIELE, III,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**CHARLES B. JOHNSON and FRANKLIN RESOURCES, INC.,**<br><br>    **Defendants.** | **Case No. 3:15-cv-00199-LB**<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER RULE 11 AND 28 USC § 1927; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**Date:       June 18, 2015**<br>**Time:       9:30 a.m.**<br>**Courtroom: C, 15th Floor**<br>**Judge:      Hon. Laurel Beeler** |

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER RULE 11 AND 28 USC § 1927; MPA IN SUPPORT; CASE NO. 3:15-cv-00199-LB**

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ..................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 3

I.    INTRODUCTION ..................................................................... 3

II.    PROCEDURAL HISTORY OF CONFLICTING COMPLAINTS AND PARTY ADMISSIONS ............................................................................. 5

    A.    The *Filed* Complaints ................................................... 5

    B.    The December 4, 2014 "Draft" Complaint .................................. 7

        1.    The Mieles *did* receive the Franklin shares ..................... 8

        2.    The Mieles *did* receive Franklin dividends, stock-splits, and correspondence ........................................................... 8

        3.    Plaintiff Miele III had clear notice from his own tax records, and an audit by the IRS, that he owned Franklin shares and dividends .................................................................. 9

    C.    Plaintiff's Counsel's Pre-Filing Admissions to Franklin .................... 9

        1.    Plaintiff was paid $2 million by Mulvihill in or about 1990 for his shares ................................................................. 9

        2.    Plaintiff sued Johnson and Franklin, rather than family members or business partners, without any evidence of their culpability ... 10

III.    LEGAL ARGUMENT ................................................................. 12

    A.    Legal Standards ........................................................... 11

        1.    Rule 11 Permits Sanctions for a Frivolous Complaint ............... 12

        2.    Section 1927 Permits Sanctions for Vexatious Post-Filing Conduct .................................................................... 14

    B.    Plaintiff's Counsel Should Be Sanctioned Under Rule 11 ................. 15

    C.    Plaintiff's Counsel Should Be Sanctioned Under Section 1927 ............. 21

IV.    CONCLUSION ........................................................................ 23

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER RULE 11 AND 28 USC § 1927; MPA IN SUPPORT; CASE NO. 3:15-cv-00199-LB**   i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Title Ins. Co. v. Lacelaw Corp.,*
861 F.2d 224 (9th Cir. 1988) ........................................................................ 19

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .................................................................................... 16

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) .................................................................................... 16

*Business Guides, Inc. v. Chromatic Commc'ns Enters, Inc.*
498 U.S. 533 (1991) .................................................................................... 14

*Chambers v. NASCO, Inc.*
501 U.S. 32 (1991) ...................................................................................... 14

*Cooter & Gell v. Hartmarx Corp.*
496 U.S. 384 (1990) ........................................................................... 12, 13, 14

*Elan Microelectronics Corp. v. Apple, Inc.*
2009 WL 2972374 (N.D. Cal. Sept. 14, 2009) .............................................. 13

*Evans v. Allied Barton Sec. Servs., LLP*
2010 U.S. Dist. LEXIS 121537 (N.D. Cal. Dec. 31, 2009) ............................. 20

*Giles v. Thompson,*
2010 U.S. Dist. LEXIS 77618 (S.D. Cal. 2010) ........................................... 19

*Graffam & Another v. Burgess,*
117 U.S. 180 (1886) .................................................................................... 19

*Herships v Maher*
1998 WL 164943 (N.D. Cal. Mar. 10, 1998) ............................................... 13

*Holgate v. Baldwin*
425 F.3d 671 (9th Cir. 2005) ................................................................... 13, 15

*In re Nichols*
82 Cal.App. 73 (1927) ................................................................................. 13

*In re Prudential Ins. Co. Am. Sales Practice Litig.*
278 F.3d 175 (3d Cir. 2002) ........................................................................ 14

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

*Jimenez v. Madison Area Technical Coll.*
    321 F.3d 652 (7th Cir. 2003) ................................................................ 20

*Kendrick v. Zanides*
    609 F. Supp. 1162 (N.D. Cal. 1985) ......................................................... 20

*Lahiri, et al. v. Universal Music and Video Distr. Corp.,*
    606 F.2d 1216 (9th Cir. 2010) ............................................................... 14

*Lloyd v. Schlag*
    884 F.2d 409 (9th Cir. 1989) .................................................................... 20

*Mellow v. Sacramento Cnty.*
    365 Fed. App'x. 57 (9th Cir. 2010) ........................................................ 20

*MGIC Indemnity Corp. v. Weisman*
    803 F.2d 500 (9th Cir. 1986) ................................................................. 13

*Roadway Express v. Piper*
    447 US 752 (1980) ..................................................................................... 19

*Salstrom, et al. v. Citicorp.,*
    74 F.3d 183 (9th Cir. 1996) ............................................................. 14, 19

*Truesdell v. S. Cal. Permanente Med. Grp.*
    209 F.R.D. 169 (C.D. Cal. 2002) .............................................................. 13

*Truesdell v. Southern California Permanente Medical Group*
    293 F.3d 1146 (9th Cir. 2002) .................................................................... 1

**Statutes**
28 U.S.C. § 1927 ......................................................................... 1, 2, 14, 23

**Rules**
Federal Rules of Evidence
    Rule 801(d)(2)(C) and (D) ......................................................................... 19

Federal Rule of Civil Procedure
    Rule 11 ....................................................................................................... 23

    Rule 11(b) ....................................................................................... 1, 2, 12

    Rule 11(b)(3) ............................................................................................. 13

    Rule 11 (c) ........................................................................................... 1, 2

    Rule 11(c)(2) ............................................................................................... 1

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER RULE 11 AND**     iii
**28 USC § 1927; MPA IN SUPPORT; CASE NO. 3:15-cv-00199-LB**

## NOTICE OF MOTION AND MOTION

### TO PLAINTIFF AND HIS COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on **June 18, 2015 at 9:30 a.m.**, or as soon thereafter as the matter may be heard before the **Honorable Magistrate Judge Laurel Beeler**, Courtroom C, 15th Fl., 450 Golden Gate Ave., San Francisco, CA 94102, Defendants CHARLES B. JOHNSON and FRANKLIN RESOURCES, INC. (collectively "Defendants") shall and hereby do move, pursuant to Rule 11(b) and (c) of the Federal Rules of Civil Procedure ("Rule 11") and 28 U.S.C. § 1927 ("Section 1927") for an order (1) striking the Amended Complaint (Doc. 17) in its entirety, (2) finding that Plaintiff's counsel failed to comply with Rule 11 and/or Section 1927, and (3) imposing sanctions against Plaintiff's counsel in the amount of Defendants' reasonable attorney's fees and costs resulting from the violation.

Pursuant to Rule 11(c)(2), Plaintiff was provided with a 21-day "safe-harbor" period before filing this Motion with the Court. *Truesdell v. Southern California Permanente Medical Group*, 293 F.3d 1146, 1153 (9th Cir. 2002). Defendants served Plaintiff, through his counsel, with this Motion and all supporting papers on April 23, 2015, which is not less than 21 days before filing the Motion with the Court, and Plaintiff refused to withdraw the Amended Complaint or dismiss any of the Defendants. *See* Declaration of Joseph W. Cotchett, ¶¶5 and 6.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declarations of Maria Gray, Richard Hanrahan, and Joseph W. Cotchett filed herewith, the Request for Judicial Notice and Declaration of Mark C. Molumphy filed herewith, the documents on file with the Court, and such further evidence and argument as the Court may permit.

Dated:  May 14, 2015                    **COTCHETT, PITRE & McCARTHY, LLP**

By:    */s/ Joseph W. Cotchett*
                    Joseph W. Cotchett

*Attorneys for Defendants Charles B. Johnson and
Franklin Resources, Inc.*

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER RULE 11 AND
28 USC § 1927; MPA IN SUPPORT; CASE NO. 3:15-cv-00199-LB**                    1

## STATEMENT OF ISSUES TO BE DECIDED

1.     Whether Plaintiff's counsel violated Rule 11(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927 by advancing frivolous legal and factual contentions and omitting known material facts in filing an Amended Complaint in this litigation.

2.     Whether Plaintiff's counsel withheld critical facts that it had knowledge of before filing the Amended Complaint and failed to disclose those facts in bad faith.

3.     Whether sanctions should be imposed against Plaintiff's counsel, including reasonable attorney's fees and costs payable to Defendants Charles B. Johnson and/or Franklin Resources, Inc., and striking the Amended Complaint.

4.     If monetary sanctions are awarded, what is the amount of reasonable attorney's fees and costs pursuant to Rule 11(b) and (c) of the Federal Rules of Civil Procedure and/or 28 U.S.C. § 1927.

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER RULE 11 AND 28 USC § 1927; MPA IN SUPPORT; CASE NO. 3:15-cv-00199-LB**          2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

**We are mindful of the possibility that publicly filing this lawsuit may result in the discovery of a substantial amount of information about the history and origin of the claims, which may cast Mr. Johnson, and possibly Franklin, in an unflattering light.  Thus, resolving this matter promptly and privately would be in all parties' best interest. *[I]n the event* we learn that culpability resides in Johnson or Franklin we expect to pursue our client's claims vigorously unless settled earlier.**

(*See* December 4, 2014 letter from Jeffrey L. Liddle, Plaintiff's counsel, attached as **EXHIBIT E** to the Declaration of Maria Gray ("Gray Decl."), emphasis added).

Plaintiff Anthony P. Miele, III ("Miele III") and his counsel filed this action in bad faith and only after their threats to embarrass Defendants Charles Johnson and Franklin Resources, Inc. into paying an extortionate settlement were unsuccessful.[1]  Just five weeks before filing his Complaint, Plaintiff's counsel sent a draft form of the Complaint along with a cover letter conceding that the allegations asserted in the draft were not based on evidence of Defendants' culpability.  Plaintiff's counsel then filed this action on January 14, 2015, making the same allegations with full knowledge that the allegations had no evidentiary support, and omitted key facts that exculpate Defendants from liability.

More recently, on April 21, 2015, after Defendants filed a Motion to Dismiss, Plaintiff's counsel filed an Amended Complaint making the same false allegations and continuing to omit the same critical facts.  Plaintiff alleges that Defendants concealed from Plaintiff his interest in Franklin shares, originally sold to his father Anthony P. Miele, Jr. ("Miele Jr.") in 1973, and held in trust while Plaintiff was a minor.  However, the draft Complaint prepared and provided by Plaintiff's counsel confirmed that Miele III and his family members received the allegedly missing shares and dividends.  The draft Complaint also contained an entire section relating to the work performed by McCarter & English ("McCarter"), the Miele family's long time attorneys, who represented Miele Jr.'s Estate and held Miele III's Franklin shares on his behalf.

---

[1] Within an hour of filing the Complaint on January 14, 2015, a lengthy and detailed article was published about the lawsuit against Franklin and Charles Johnson, including quotes obtained in advance of the filing from Mr. Johnson and John Steinbach, both identified in the Complaint.

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER RULE 11 AND 28 USC § 1927; MPA IN SUPPORT; CASE NO. 3:15-cv-00199-LB**                    3

In <u>1983</u>, in closing the Estate, McCarter sent Plaintiff's shares to his mother – Evelyn Miele – the Administratrix of Miele Jr.'s Estate, who then **<u>acknowledged in writing</u>** that she received them.  Later, in <u>1992</u>, when Plaintiff turned 21, the IRS audited his past tax returns and notified him that there were unreported stock dividends corresponding to 93,750 shares of Franklin stock – dispelling fully Plaintiff's current claim that he had no notice of his Franklin shares until 2012.  **<u>This entire section was deleted from the filed Complaint and Amended Complaint</u>**.

Further, before the Complaint and Amended Complaint were filed, Plaintiff's counsel had extensive discussions with Franklin employees who provided detailed information about Miele III's shares.  (Gray Decl., ¶¶6-7.)  During those discussions, Plaintiff's counsel admitted that Miele III was paid <u>$2 million</u> by Eugene Mulvihill in or around 1990, corroborating Miele III's own allegation that Mulvihill admitted paying him for his Franklin shares.  (*Compare* Gray Decl., ¶5 and Amended Complaint ("AC") at ¶¶101, 108.)  Plaintiff's counsel also shared that Mulvihill had recently died intestate with an estate worth "at least $49 million."  (Gray Decl., ¶5.)

Thus, one of two things happened to Plaintiff's shares.  Either he, through his mother or others, knowingly sold his shares to a family friend for millions of dollars and now feels that he didn't get enough money and aims to try and get more from Defendants who were never parties to that transaction, or he was hoodwinked by the same family friend into transferring his shares and rather than sue a family member or a close family friend (*see infra* Sec. II.A.2.), seeks to hold third parties Johnson and Franklin responsible.  In either case, Defendants have no liability in connection with Plaintiff's claims.  Plaintiff and his counsel cannot fabricate events and omit critical facts to try to state a claim.  This action is a scam through which Plaintiff and his counsel seek to use this Court to extract a settlement, and is exactly what Rule 11 and Section 1927 were designed to stop.  Sanctions are warranted by clear and convincing evidence because Plaintiff and his counsel <u>know</u> that the lawsuit is without merit.

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER RULE 11 AND 28 USC § 1927; MPA IN SUPPORT; CASE NO. 3:15-cv-00199-LB**          4

## II.   PROCEDURAL HISTORY OF CONFLICTING COMPLAINTS AND PARTY ADMISSIONS

### A.   The *Filed* Complaints

On January 14, 2015, Plaintiff Miele III filed his original Complaint, *i.e.*, more than 40 years after the underlying stock transaction between his father, Anthony Miele Jr. ("Miele Jr."), and Charles Johnson.  (Doc. 1.)

On March 31, 2015, Defendants filed a Motion to Dismiss the Complaint asserting that the claims were time-barred, failed to state legal claims and contradicted facts already well known to Plaintiff and his counsel.  (Doc. 15.)

On April 21, 2015, rather than dismiss his action or oppose Defendants' Motion to Dismiss, Plaintiff filed an Amended Complaint.  (Doc. 17.)  The Amended Complaint essentially ignores the issues identified in Defendants' Motion to Dismiss, and repeats the prior false allegations.  The key "facts" alleged in the filed Amended Complaint ("AC") are as follows:

1.   In 1973, Johnson, then CEO of Franklin, borrowed $100,000 from Miele III's father, Miele Jr.  Johnson repaid the loan and gave Miele Jr. 4,000 Franklin shares as a bonus.  (AC ¶¶41, 42.)  Miele Jr. placed the 4,000 shares in a revocable trust for the benefit of his then infant son, Miele III, and the shares were held in the name "Anthony P Miele Jr TTEE Anthony P Miele III."  (AC ¶¶21, 44.)

2.   In 1974, Miele Jr. passed away.  (AC ¶¶5, 46.)

3.   Between 1974 and 1983, Miele III's Franklin share certificate was physically held by the McCarter law firm, the attorneys for the Miele Estate.  Miele III's mother, Evelyn Miele, who also worked at McCarter, served as the Administratrix of the Estate.  The Miele Estate was wound-up in 1983.   (AC ¶¶24, 27, 47.)

4.   Between 1984 and 1991, Franklin paid dividends and issued additional shares due to stock splits.  As of March 1991, Bank of New York ("BNY") – Franklin's transfer agent – held 128,125 shares and $186,496.88 in uncashed dividends for the account.  (AC ¶48-49.)

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

5. In <u>1991</u>, after mail and dividend checks addressed to Miele were returned to BNY, Franklin asked BNY to try to ascertain the shareholder's address. BNY sent a letter to the last known address for the Miele account. (AC ¶¶74-76, 88.)

6. At an unstated date, Johnson learned that the Miele shares might be escheated to the State of New Jersey, and asked Eugene Mulvihill to help locate Miele Jr. Mulvihill was a close friend of Miele Jr. and present when Miele Jr. allegedly agreed to loan money to Johnson in 1973. (AC ¶¶20, 77, 80.)

7. In <u>1991</u>, BNY received an application for a replacement share certificate for certificate NU-6580 for 5,000 shares.[2] (AC ¶83.) In <u>1992</u>, share certificate NU-6580 was cancelled and a replacement certificate was issued, and after such time, neither Miele Jr. nor Miele III appeared on the Franklin Shareholder list in 1992. (AC ¶90.)

8. In <u>2012</u>, Charles Johnson saw a picture of Veronica Miele Beard in a book authored by Anson Beard, Jr., and called Beard to see if there was any relation to Miele Jr. Johnson then "expressed the hope that the Miele children had received the Franklin stock." (AC ¶98.) Johnson mailed Beard a page from a 1974 BNY ledger showing Franklin shares registered in the name of Anthony P. Miele, Trustee for Anthony P. Miele, III. (AC ¶¶98, 100.)

9. In <u>2012</u>, Miele III contacted Mulvihill and said that "he was not aware of any stock." Mulvihill responded that it had to do with "<u>the money I gave you in 1990</u> . . . your father [Miele, Jr.] did a lot of deals and I [Mulvihill] will tell you [Miele III] about it when you are forty." (AC ¶101) (emphasis added.)

10. On <u>October 17, 2012</u>, Miele III contacted Mulvihill again and told him to explain what had happened with the Franklin stock. Mulvihill said he contacted one of his business partners, John Steinbach, who "signed something" for Mulvihill. Steinbach admitted signing a document in Miele III's name. Mulvihill also said that Miele III's uncle, [Joseph P.] J.P. Miele,

---

[2] While not addressed in the Amended Complaint, the draft Complaint alleges that Franklin stock split 2-for-1 in 1983, resulting in the issuance of share certificate NU-6580 for 5,000 additional shares in the name of Anthony P. Miele, Jr. trustee for Anthony P. Miele, III. (Gray Decl., **EXHIBIT E** (draft Complaint) at ¶83).

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER RULE 11 AND 28 USC § 1927; MPA IN SUPPORT; CASE NO. 3:15-cv-00199-LB**          6

1  had cashed all of the dividends, and that if Miele III ever investigated this matter, Robert

2  Brennan "*would hire a Russian hit man to kill [Miele III] and your family.*"  Ten days later,

3  Mulvihill died of a heart attack.  (AC ¶¶104,106.)

4         11.     In <u>August 2013</u>, Miele III received a call from Steinbach asking him to play in a

5  memorial golf outing for Mulvihill.  Steinbach said Mulvihill "was so good to Miele III" and

6  "got money" for Miele III.  Steinbach also admitted he signed something in Miele III's name, at

7  Mulvihill's request, and Mulvihill said it was needed to get money for Miele III.  (AC ¶108.)

8         12.     In <u>September 2013</u> – notwithstanding the fact that Steinbach purportedly admitted

9  signing documents relating to Miele III's shares without his knowledge or consent and Plaintiff's

10  allegations that Mulvihill stole his shares – Miele III attended the golf outing with Steinbach.

11  Steinbach told Miele III that he "ought to leave things from the past alone," that people "did a lot

12  of things back then that they don't want brought back up," and that Steinbach had "signed things

13  he didn't want to sign."  (AC ¶108.)

14      **B.**     **The December 4, 2014 "Draft" Complaint**

15       The filed Complaint and Amended Complaint are most notable for what is <u>missing</u>,

16  including any explanation of what happened to Miele III's shares after his father's death in 1974,

17  when they were admittedly delivered to McCarter, Miele's long-term family law firm, held in a

18  safe deposit box under McCarter's control, and overseen as part of the Miele Estate administered

19  by Miele III's mother, Evelyn.

20       Many of the missing facts were, however, contained in an earlier <u>December 4, 2014</u> draft

21  Complaint delivered to Franklin (along with the cover letter from Plaintiff's counsel with the

22  threat to settle or have the suit publicized (*see supra* fn. 1)).  The draft Complaint was never filed

23  with the Court.  Indeed, the draft Complaint included an entire section – "McCarter & English

24  Represents the Miele Estate" – that was intentionally <u>omitted</u> from the filed Complaints, even

25  though the allegations contained therein bear directly on the merits (or lack thereof) of Plaintiff's

26  claims against Defendants.  *See* Gray Decl., **<u>EXHIBIT E</u>** (draft Complaint or "DC") at ¶¶74-91;

27  see also <u>Appendix A</u> attached hereto, restating the omitted allegations from the draft Complaint

28  verbatim.  As revealed in the draft Complaint:

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER RULE 11 AND 28 USC § 1927; MPA IN SUPPORT; CASE NO. 3:15-cv-00199-LB**
   7

### 1.     The Mieles *did* receive the Franklin shares.

In December 1974, at least three members of Miele's family, including Evelyn Miele, J.P. Miele, and Anthony P. Miele, Sr. (Miele Jr.'s mother, uncle and grandfather), along with a family accountant and multiple McCarter attorneys, met and received the original Franklin share certificate issued to Miele.  The stock certificate was put in a safe deposit box with the Miele's attorneys.  (DC ¶¶74-76.)  In September 1983, when Miele III was still a minor, McCarter attorney Jay Poppinga sent a letter to Evelyn Miele, the Administratrix of the Miele Jr. Estate, enclosing Franklin stock certificates NU-02763 (for 4,000 shares) and NU-5497 (for 1,000 shares from an April 1982 stock split).  (AC ¶48; DC ¶87.)  He also specifically advised her that, to the extent she wasn't already receiving them, to write Franklin and request that all dividends be sent directly to her home address in North Caldwell, New Jersey.  <u>Evelyn Miele signed the letter acknowledging that she received the Franklin stock on October 11, 1983</u>.[3]  (DC ¶88.)

### 2.     The Mieles *did* receive Franklin dividends, stock-splits, and correspondence.

After Miele Jr.'s death in 1974, Miele III's uncle J.P. Miele, a practicing attorney, took over Miele Jr.'s company, Modern Transportation, located at 75 Jacobus Avenue, South Kearny, New Jersey.  (DC ¶77.)  Between 1975 and 1977, Franklin's record address for Miele III's shares was that of Modern Transportation in South Kearny, and J.P. Miele <u>received correspondence and share information</u> from Franklin and its transfer agent at that address, and sent them to McCarter.  (DC ¶¶78-79, 81.)  In 1978, the record address for the shares was changed to the address of J.P. Miele's law firm, Miele and Cooper, 160 South Livingston Avenue, Livingston, New Jersey.  (DC ¶81.)  Franklin's transfer agent then sent dividend checks and additional share certificates from stock splits to the new address of record, <u>which were received by J.P. Miele and forwarded to McCarter and Evelyn Miele</u>.  (DC ¶¶82-85.)  At some point in 1983 or 1984, J.P. Miele's law firm moved from its 160 South Livingston address.  (DC ¶89.)  However, despite directions to do

---

[3]  As discussed below, on March 16, 2015, Plaintiff's counsel refused to provide this key exculpatory evidence to Defendants, even though it completely undermines the allegations in the filed Complaint and Amended Complaint.

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER RULE 11 AND 28 USC § 1927; MPA IN SUPPORT; CASE NO. 3:15-cv-00199-LB**

so from their family attorneys (DC ¶88), the Mieles never notified Franklin or BNY of any change of address, nor did they take any of the recommended steps to register the shares to a successor custodian while Plaintiff was still a minor or to transfer the share registration to Plaintiff upon reaching the age of majority.

### 3. Plaintiff Miele III had clear notice from his own tax records, and an audit by the IRS, that he owned Franklin shares and dividends.

Miele III's tax returns in the 1980s reflected his receipt of Franklin dividends.  (DC ¶¶86, 90.)  Further, when Miele III turned 21 in 1992, the IRS audited his 1989 tax return.  The IRS found that Miele III had $41,250 in <u>unreported</u> stock dividends from Franklin, an amount that corresponded with 93,750 shares of Franklin stock.  (DC ¶91.)

During the meet and confer process that preceded this Motion, Plaintiff's counsel admitted that the 1992 IRS audit occurred, that Miele III was contemporaneously <u>aware</u> of the audit and its findings, and that Miele III sought the assistance of Eugene Mulvihill – who at that time he considered to be a "surrogate father – for advice.  Mulvihill directed Miele III to an accountant and <u>Miele III ultimately paid the taxes on the Franklin stock dividends</u>, i.e., the same stock that he now claims he knew nothing about until 2012.  Cotchett Decl., ¶6.

### C. Plaintiff's Counsel's Pre-Filing Admissions to Franklin

### 1. Plaintiff was paid $2 million by Mulvihill in or about 1990 for his shares.

On May 17, 2013, more than one year before filing this case, Plaintiff's counsel, Jeffrey L. Liddle ("Liddle") of Liddle & Robinson L.L.P., contacted Franklin about his purported interest in tracing Miele III's shares and requested information and assistance.  Liddle spoke with Maria Gray, an attorney at Franklin, and made several revealing admissions to her.

Liddle stated that, when Miele III was approximately 18 or 19 years old, Mulvihill, a friend of the Miele family, went to the Miele house to meet with Miele III, and presented him with documents to sign and, in return, gave Miele III <u>$2 million</u>.  *See* Gray Decl., ¶5.  He further shared that Mulvihill had died intestate a few months earlier and that Mulvihill's estate had "at least <u>$49 million</u>."  *Id.*

1    Liddle added that Mulvihill, who had a close relationship with Miele Jr. (Plaintiff's

2    father), used Robert Brennan at First Jersey Securities to execute stock transactions for him.

3    Liddle stated his belief that the stock certificates for Miele III's Franklin shares were put into

4    street name with Prudential Bache Securities in 1989.  *Id.*

5    None of these admissions appears in the filed Complaint or Amended Complaint.  Rather,

6    Plaintiff's counsel merely alleges that Mulvihill gave "money" to Miele III, without describing

7    either the amount or the purpose of the payment, i.e., <u>that it was for his Franklin shares at issue</u>

8    <u>in this litigation</u>.  (*Compare* filed Amended Complaint at ¶101, with draft Complaint (Gray

9    Decl., **<u>EXHIBIT E</u>**) at ¶119.)

10       **2.**       **<u>Plaintiff sued Johnson and Franklin, rather than family members or</u>**
                      **<u>business partners, without any evidence of their culpability.</u>**

11    On December 4, 2014, Plaintiff's counsel forwarded the draft Complaint along with a

12    cover letter stating that they were "mindful of the possibility that publicly filing this lawsuit . . .

13    may cast Mr. Johnson, and possibly Franklin, in an unflattering light" and suggesting that the

14    matter be settled "promptly and privately."  (Gray Decl., **<u>EXHIBIT E</u>**).  Plaintiff's counsel's

15    cover letter candidly admitted that – as of December 4, 2014 – they still did not have evidence of

16    Defendants' culpability: **"[I]n the event we learn that culpability resides in Johnson or**

17    **Franklin we expect to pursue our client's claims vigorously unless settled earlier."**  *Id.*  Yet,

18    just weeks later, on January 14, 2015, and without any additional information about Defendants'

19    culpability (demonstrated by a comparison of the draft and filed Complaints), Plaintiff's counsel

20    sued Defendants anyway.

21    Plaintiff's bad faith motivation is further illustrated by his inconsistent allegations and

22    failure to sue other parties allegedly responsible for his losses.  For example, while Plaintiff sued

23    Johnson for asking Eugene Mulvihill (a known close friend of Miele Jr.) to help locate Miele Jr.,

24    despite Mulvihill's "convictions and acts of fraud and dishonesty" (AC ¶133), Plaintiff admits

25    that he received money from Mulvihill (AC ¶101), attended his funeral (AC ¶107), and played in

26    a memorial golf tournament in his honor (AC ¶108).  Plaintiff did not sue the Estate of Eugene

27    Mulvihill, even though Mulvihill allegedly orchestrated a scheme to take his Franklin shares.

28

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER RULE 11 AND        10
28 USC § 1927; MPA IN SUPPORT; CASE NO. 3:15-cv-00199-LB**

1   (AC ¶¶101, 104).  Plaintiff also did not sue John Steinbach, Mulvihill's "business partner,"

2   despite Steinbach's admission to signing documents in Miele III's name. (AC ¶¶104, 108).

3           In fact, while Plaintiff's entire case against Defendants is based on their purported

4   "delegation of responsibility" to Mulvihill, who they characterize as a nefarious character who

5   ran off with his shares, public records reflect that, to this day, Plaintiff remains exceptionally

6   close with the Mulvihill family.  For example, in 2010 and continuing today, Plaintiff has served

7   as a director of Boomerang Systems, Inc., a New Jersey corporation run by Christopher

8   Mulvihill, Eugene Mulvihill's son.  *See* **EXHIBIT 2** to the Declaration of Mark C. Molumphy in

9   support of Defendants' Request for Judicial Notice ("Molumphy Decl."), Boomerang Systems,

10  Inc.'s 2014 Form 10-K at 29-30.  Plaintiff (and his wife) also own more than five percent (5%)

11  of Boomerang's stock, along with other investors, including the Estate of Eugene Mulvihill (co-

12  administered by Gail Mulvihill, Eugene's widow and Andrew Mulvihill, another of Eugene's

13  sons), Lake Isle Corp. (controlled by Gail Mulvihill), Sunset Marathon Partners LLC (controlled

14  by James Mulvihill, another son), Sunset Group Inc. (where James Mulvihill acts as trustee), and

15  Fox Hunt Wine Collectors, LLC (managed by James Mulvihill).  *See Id.* at 21-23, 30, 34-35, 37-

16  39.  Boomerang contracts with Coordinate Services, Inc., owned by Gene Mulvihill, Jr., the

17  oldest son of Eugene and Gail Mulvihill.  (*Id.* at F-20; *see also* Boomerang Systems, Inc. 2012

18  Form 10-K at 42, **EXHIBIT 1** to Molumphy Decl.)

19          Prior to his death in 2012, Eugene Mulvihill was also active in Boomerang, along with

20  his "business partner," John Steinbach.  According to its 2012 Form 10-K, Boomerang borrowed

21  over $1.4 million from Atlantic and Madison of NJ Corp., a corporation owned by Gail Mulvihill

22  and for which Steinbach served as President.  *Id.* at 42-43.

23

24

25

26

27

28

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

### III.     LEGAL ARGUMENT

#### A.     Legal Standards

##### 1.     Rule 11 Permits Sanctions for a Frivolous Complaint.

Rule 11 permits courts to sanction attorneys or parties who submit pleadings for an improper purpose or that contain frivolous arguments or arguments that have no evidentiary support.  Fed. R. Civ. P. 11(b) and (c).  Rule 11(b) states in relevant part:

> By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. . . .

Fed. R. Civ. P. 11(b).

Because the filing of a lawsuit is a serious matter, Supreme Court and Ninth Circuit law is well established that Rule 11 sanctions are appropriate when a complaint contains frivolous or unsupported allegations or is brought for improper purposes.  *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 390, 397-398 (1990) (Justice O'Connor held district court retains jurisdiction to award Rule 11 sanctions after a frivolous complaint is voluntarily dismissed); partially superseded by statute as explained by, *De La Fuente v. DCI Telecomms., Inc., et al.*, 259 F.Supp.2d 250, 257 n.4 (S.D.N.Y. 1993) (noting the 1993 amendment adding Rule 11(c) "safe harbor" provision); *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (Judge McKeown held Rule 11 sanctions warranted for frivolous copyright infringement suit after defense counsel provided plaintiff's counsel with various documents and materials showing the complaint lacked merit but remanded to ensure district court's fee award was grounded on conduct covered by Rule 11).

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER RULE 11 AND 28 USC § 1927; MPA IN SUPPORT; CASE NO. 3:15-cv-00199-LB**                12

"When a complaint is challenged under Rule 11, a district court must conduct a two-prong inquiry to determine whether the complaint is frivolous, asking: (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676-678 (9th Cir. 2005) (Judge Nelson affirmed award of sanctions against plaintiffs' attorney for filing frivolous civil rights complaint in bad faith for failure to allege any element required under 28 U.S.C. § 1985 including membership in a protected class or acts in furtherance of a conspiracy).

In making this determination, courts are guided by the central purpose of Rule 11 "to deter baseless filings in district court" and to enforce the "duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact." *Cooter & Gell,* 496 U.S. at 401 (holding that an attorney's pre-filing inquiry must be reasonable under the circumstances). Indeed, Rule 11 requires that <u>all</u> factual contentions in a signed complaint have "evidentiary support" even <u>before the complaint is filed</u>. Fed. R. Civ. P. 11(b)(3); *see Truesdell v. S. Cal. Permanente Medical Group, et al.*, 293 F.3d 1146, 1153-54 (9th Cir. 2002) (Judge Susan Graber found Rule 11 sanctions warranted where "the district court properly concluded 'the allegations and other factual contentions' in Plaintiff's complaint lacked 'evidentiary support' and stated allegations 'upon information and belief' that Plaintiff's counsel must have known were false."); *Herships v. Maher*, No. C-97-3114, 1998 WL 164943, at *2 (N.D. Cal. Mar. 10, 1998) (Rule 11 imposes "an affirmative duty to conduct a reasonable inquiry into the facts and the law *before filing*") (emphasis in original). Under the Rule, attorneys are not permitted to rely on suspicion or speculation as a basis for factual allegations. *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986); *Elan Microelectronics Corp. v. Apple, Inc.*, No. C-09-10531, 2009 WL 2972374, at *4 (N.D. Cal. Sept. 14, 2009) ("Simply guessing or speculating that there may be a claim is not enough."); *In re Nichols,* 82 Cal.App. 73, 75-78 (1927) (applying same principles in California state court, where woman hired attorney to demand money from a person and the threatened lawsuit was a sham claim).

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER RULE 11 AND 28 USC § 1927; MPA IN SUPPORT; CASE NO. 3:15-cv-00199-LB**    13

In assessing whether an attorney has satisfied Rule 11 obligations, the court must consider "factual questions regarding the nature of the attorney's pre-filing inquiry and the factual basis of the pleading." *Cooter & Gell*, 496 U.S. at 399.  When an attorney signs and files a complaint without first conducting a reasonable investigation, sanctions are appropriate. *Business Guides, Inc. v. Chromatic Commc'ns Enters, Inc.,* 498 U.S. 533, 541 (1991).

## 2.   <u>Section 1927 Permits Sanctions for Vexatious Post-Filing Conduct.</u>

In addition to Rule 11's provisions, sanctions may be granted for unreasonable and vexatious conduct after a complaint is filed under 28 U.S.C. § 1927.  Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously may be required by the court to satisfy personally such excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

The Ninth Circuit has elaborated on the meaning of "unreasonable and vexatious" conduct, holding that sanctions can be awarded under Section 1927 based on a finding of subjective bad faith.  *Salstrom, et al. v. Citicorp Credit Services, et al.,* 74 F.3d 183, 184 (9th Cir. 1996) (Judge Pamela Rymer affirmed and held that it was proper for the district court to award sanctions under Section 1927 based on subjective bad faith); *Lahiri, et al. v. Universal Music and Video Distr. Corp.*, 606 F.3d 1216, 1219-23 (9th Cir. 2010) (Judge Suzanne Conlon sitting by designation affirmed sanctions based on clear and convincing evidence of frivolous suit filed 21 years after writer of movie theme song signed agreement under Indian law giving copyright to film producer); *see also In re Prudential Ins. Co. Am. Sales Practice Litig.*, 278 F.3d 175, 188-189 (3d Cir. 2002) (court may impose sanctions pursuant to the court's inherent authority "where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)).

As demonstrated below, sanctions are warranted here under both Rule 11 and Section 1927.

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER RULE 11 AND 28 USC § 1927; MPA IN SUPPORT; CASE NO. 3:15-cv-00199-LB**      14

### B.     Plaintiff's Counsel Should Be Sanctioned Under Rule 11

In deciding whether a complaint is frivolous under Rule 11, the Court must assess (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Holgate*, 425 F.3d at 676-678.  The answers to these questions call for the imposition of sanctions here.

First, the Amended Complaint is legally and factually baseless from an objective perspective.  Indeed, for the reasons stated in Defendants' Motion to Dismiss, and even without reference to the draft Complaint, the claims against Defendants are frivolous on their face and undermined by Plaintiff's own allegations that members of his family, including his mother who served as Administratrix of the Miele Estate, did receive the Franklin shares and dividends of which Plaintiff now claims he had no notice.  (AC ¶¶73, 83.)  The Amended Complaint also alleges facts that, on their face, establish that any possible claims were time barred years ago, when Plaintiff admittedly had notice of shares passed down from his father.

Second, the record is clear that Plaintiff's counsel not only failed to conduct a reasonable and competent inquiry before signing and filing the Amended Complaint, but the investigation revealed facts that undermine the claims made.  Several examples are provided below.

### Admissions in Plaintiff's draft Complaint

Plaintiff's own draft Complaint reveals that Plaintiff's family members received stock, dividends and correspondence from Franklin for years, dutifully sent by Franklin and BNY to Miele's stated address of record.  Further, Plaintiff's draft Complaint, and subsequent meet and confer calls with Plaintiff's counsel, reveal that Plaintiff had notice of his Franklin stock from his own tax returns – and an IRS audit when he was 21 – which confirmed the existence of dividend payments for thousands of shares of Franklin stock.  In 1992, Plaintiff even paid taxes on these Franklin stock dividends.  Plaintiff's counsel's investigation also revealed that Plaintiff was paid $2 million by Mulvihill, a Miele family friend, undoubtedly for signing over his Franklin shares. While Plaintiff may have seller's remorse for not asking more for his shares, or have been

1    hoodwinked by his family friend, there can be no dispute that Defendants Johnson and Franklin

2    had absolutely nothing to do with Plaintiff's alleged losses.

3    **Unsupported allegations of Defendants' fraudulent conduct**

4        Plaintiff's allegation that Johnson and Franklin further engaged in intentional, <u>fraudulent</u>

5    conduct is particularly frivolous, and defies the meaning of "plausible" as defined by the U.S.

6    Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009) and *Bell Atlantic Corp. v.*

7    *Twombly*, 550 U.S. 544, 556-57 (2007).  A complaint must be dismissed where, as here, the

8    complaint lacks sufficient facts to "state a claim to relief that is plausible on its face." *Iqbal*, 556

9    U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  This "facial plausibility" standard requires the

10   plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted

11   unlawfully." *Id.*  There is not a single fact alleged in the Amended Complaint against Johnson or

12   Franklin establishing that they somehow fraudulently concealed any alleged illegal transfer of

13   the shares of Miele III.  *See Christian*, 286 F.3d at 1127 (9th Cir. 2002).[4]

14       If anything, the factual allegations border on, if not demonstrate, a fraud perpetrated by

15   Plaintiff and his counsel, and possibly others, on this Court.  The draft Complaint (and cover

16   letter from Plaintiff's counsel) delivered to Franklin also show that <u>other entities</u> were threatened

17   with being named as defendants, and a similar form was sent to other potential defendants,

18   including Computershare (and possibly McCarter, the Miele family's own law firm).

19   **Disregard of evidence provided by Franklin, Computershare and McCarter**

20       Plaintiff's decision to press forward and file the Amended Complaint against Defendants

21   is inexcusable given information available from their own attorneys at McCarter, and located and

22   provided by Franklin and Computershare (its current transfer agent) before the Amended

23   Complaint was filed.  (AC ¶¶115-116.)  For example, on <u>February 19, 2014</u>, Defendant Johnson,

24

25   _____

     [4] The 9th Circuit in C*hristian* (J. McKeown) upheld the award of more than $500,000 in sanctions
26   against the plaintiffs' attorney for filing a frivolous complaint and engaging in a "rap sheet" of
     prior litigation misconduct, but vacated and remanded the matter to ensure that the sanctions
27   were grounded on conduct covered by Rule 11 including signed pleadings, motions, and other
     filings.  *Id.* at 1125-1132.

28

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER RULE 11 AND**     16
**28 USC § 1927; MPA IN SUPPORT; CASE NO. 3:15-cv-00199-LB**

attempting to assist Plaintiff and his counsel, sent an email to David Marek ("Marek"), another attorney at Liddle & Robinson, providing additional information regarding counsel's request for documents relating to the Miele III shares, and stating, "I hope this is helpful."  *See* Gray Decl., ¶6 and **EXHIBIT C**.  Franklin's counsel, Maria Gray, then followed up with a letter to Marek on March 21, 2014, describing her extensive review of the files of Franklin and request of records from Franklin's current transfer agent.  Gray supplied information on the account and certain documents from the 1989 through 1991 time period, and itemized the material sent regarding the Miele shares.  *See* Gray Decl., ¶8 and **EXHIBIT D**.  In short, Franklin did everything possible to assist Plaintiff's attorneys in their investigation.

Based on this information, Plaintiff's counsel knew before he threatened Defendants with the draft Complaint, before he filed the filed Complaint, and before he filed the Amended Complaint that it was not plausible that Johnson and Franklin engaged in any fraudulent or unlawful conduct involving the allegedly missing shares.  *See also*, Gray Decl., ¶¶3-4, 6-8, **EXHIBIT A** (Miele Jr. purchase documents), **EXHIBIT B** (February 11, 1974 proxy card signed by Anthony P. Miele, Jr., addressed to "Anthony P. Miele Jr TTEE Anthony P. Miele III c/o Modern Transportation Co., 75 Jacobus Ave., South Kearny, NJ 07032"); **EXHIBIT E** (December 4, 2014 letter from Plaintiff's counsel to Franklin, noting, "in the event we learn that culpability resides in Johnson or Franklin, we expect to pursue our client's claims vigorously unless settled earlier.")

**False allegations of BNY "investigation" and Johnson cover-up**

The filed Amended Complaint also falsely alleges – "on information and belief" – that "the topic of Miele III's account and these shares came up, and an investigation was conducted in 2008" by BNY (which by that point had merged to become Bank of New York Mellon).  (AC ¶96.)  Compounding this falsity, Plaintiff then alleges that Johnson was aware of BNY's investigation into Miele III's shares and, despite that knowledge, "suppressed or concealed these facts from Miele III, with the intention that Miele III be misled as to his dividends and shares in Franklin."  (AC ¶¶137, 139.)  Further, according to the Amended Complaint: "That 'investigation' remains completely mysterious.  Its existence was revealed in a telephone call

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER RULE 11 AND
28 USC § 1927; MPA IN SUPPORT; CASE NO. 3:15-cv-00199-LB            17

with Richard Hanrahan in 2014, but there are no details whatsoever about it, its results, who conducted it or anything other than 'lawyers were all over this.'" (AC ¶117.)  Yet, Hanrahan has confirmed under oath that he made no such statements to Plaintiff's counsel and is not aware of any BNY investigation, stating "these allegations are false."  (*See* Declaration of Richard Hanrahan ("Hanrahan Decl."), ¶8.)  Hanrahan also did <u>not</u> tell Plaintiff's counsel that Johnson was aware of an investigation into Miele III's shares.  (*Id.*)

### False Allegations that Johnson "prevented" BNY from trying to locate Miele III

The Amended Complaint boldly alleges that Johnson "prevented Hanrahan from taking action to locate Miele III" and, by doing so, "allowed for the illegal transfer of Miele III's Franklin shares and dividends." (AC ¶¶144-146.)  However, Hanrahan never made any such statement to Plaintiff's counsel; to the contrary, Hanrahan confirmed that Franklin <u>never</u> prevented or impeded him from searching for Miele III.  (Hanrahan Decl. at ¶8.)  Hanrahan also confirmed that Franklin <u>did</u> ask for his help in locating Miele, and that he took steps consistent with BNY's standard practices at the time, all of which is reflected in records produced to Plaintiff's counsel before they filed this action.  Plaintiff's counsel's allegations otherwise are simply fabricated.

### Inflammatory and irrelevant allegations, wholly unrelated to Defendants

Plaintiff's counsel's use of inflammatory facts about other parties to try to cast aspersion by association against Franklin or Johnson further illustrates their bad faith.  Indeed, Plaintiff's counsel fill four pages of the Amended Complaint with allegations about Mayflower Securities, First Jersey Securities, Robert Brennan, Harold Derber (alleged drug trafficker), Anthony Nadino, and Robert Berkson, suggesting that they all *somehow assisted* or were complicit with Franklin and Johnson in committing a massive fraud.  (AC ¶¶52 through 73.)  Yet, these paragraphs only <u>highlight</u> the frivolous nature of the Amended Complaint and included to cast Johnson and Franklin in an "unflattering light" (*see* Gray Decl., ¶8, **<u>EXHIBIT E</u>**.)  The following paragraph is illustrative:

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER RULE 11 AND
28 USC § 1927; MPA IN SUPPORT; CASE NO. 3:15-cv-00199-LB

18

AC ¶60.  The Brennan/Derber relationship was cut short in 1976 during an SEC investigation of Derber's relationship with First Jersey.  On March 22, 1976, the night before Derber was expected to testify before the SEC, Derber was struck in the back by eight bullets.  One of the bullets, lodged in the base of Derber's brain, was etched with his initials, leading to the conclusion that he had been assassinated and was not the victim of a random murder.  Since his body was found next to his Porsche, which was not stolen, the motives appeared to be clearly something other than theft.  The assassin(s) were never found.

Allegations about an assassination with an initialed bullet through the brain may be good fodder for a movie, but are not appropriate for a court of law, and Plaintiff's counsel now make a mockery of the federal court system by linking Defendants to this type of conduct by association. These and similar allegations littered throughout the Amended Complaint are clearly designed to cast Johnson and Franklin in a negative light, attempting to connect them with unsavory activities involving Plaintiff's father, his companies and his *mob acquaintances*.  The Ninth Circuit has held that, when a lawyer converts a straightforward claim into a full-fledged personal assault, a court can make a finding of bad faith and impose sanctions.  *See e.g.*, *Salstrom,* 74 F.3d at 184; *Roadway Express v. Piper*, 447 US 752, 767 (1980).

The United States Supreme Court has long recognized that when an attorney's out of court statements are made in the course of representing a client, those statements are party admissions under the Federal Rules of Evidence and admissible against the client.  Fed. R. Evid. 801(d)(2)(C) and (D); *Graffam & Another v. Burgess*, 117 U.S. 180, 187-189 (1886) (attorney's out of court statements made in the course of representing defendant that he knew his client unlawfully took plaintiff's real property were admissible against defendant, where attorney also demanded money from plaintiff to avoid his client's foreclosure on her property); *Giles v. Thompson*, 2010 U.S. Dist. LEXIS 77618, *8-*9 (S.D. Cal. 2010) (J. Lorenz) (attorney's letter admitting client owned company was admissible against client who denied owning company). Moreover, courts in this Circuit recognize that statements in a filed complaint are judicial admissions.  *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).

Here, the Amended Complaint contains judicial admissions and, when analyzed with statements made by Plaintiff's counsel in the <u>draft Complaint</u> and in calls to Franklin, along with documents provided by Franklin and its transfer agent to Plaintiff's counsel in the course of their

investigation, it is clear that the Amended Complaint is legally and factually baseless from an

objective perspective.  In other words, the Amended Complaint is frivolous and the claims within

are asserted in bad faith.

Courts impose sanctions under Rule 11 to the degree necessary "to deter repetition of

such conduct," and such sanctions may take the form of monetary and/or nonmonetary sanctions.

Fed. R. Civ. P. 11(c)(2).  Nonmonetary sanctions should, in an appropriate case, include striking

the offending filings or allegations.  *See*, *e.g.*, *Jimenez v. Madison Area Technical Coll.,* 321 F.3d

652, 657 (7th Cir. 2003) (dismissing the complaint where it was founded on the very allegations

that violated Rule 11).  The egregiousness and severity of the Rule 11 violation should be

considered in determining what sanctions are warranted.  *See, e.g., Kendrick v. Zanides*, 609

F.Supp. 1162, 1173 (N.D. Cal. 1985) ("Because of the egregiousness of the conduct involved,

the sanctions imposed will not be limited to expenses and attorneys' fees . . . ."); *Mellow v.*

*Sacramento County,* 365 Fed. App'x. 57, at *1 (9th Cir. 2010) ("The district court has wide

discretion in determining the appropriate sanction for a Rule 11 violation").

Defendants request that Plaintiff's Amended Complaint be stricken in its entirety.

Striking the Amended Complaint is warranted here to mitigate the effects of Plaintiff's assertion

of claims <u>that he had no basis to assert in the first place</u>.  Allowing the Amended Complaint to

proceed will unduly complicate and prolong a meritless case.  Defendants also request monetary

sanctions equal to the amount of the reasonable attorneys' fees and costs that Defendants have

incurred in defending against the unfounded allegations, including allegations of fraud by

Johnson or Franklin, as well as the costs of this motion.  Monetary sanctions are properly

measured by the reasonable attorneys' fees and costs incurred as a result of the violation.  *See,*

*e.g., Lloyd v. Schlag*, 884 F.2d 409, 414 (9th Cir. 1989) ("[T]he costs of the Motion were

appropriately included in the sanction award."); *Evans v. Allied Barton Sec. Servs., LLP,* No. C-

08-4993, 2010 U.S. Dist. LEXIS 121537, at *3 (N.D. Cal. Dec. 31, 2009) (J. Chesney) (awarding

"the costs and attorney's fees . . . incurred . . . by reason of [counsel's] sanctionable conduct").

Plaintiff's counsel have asserted these claims without any factual support – indeed while

in possession of evidence demonstrating conclusively that there was no misconduct or fraud by

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER RULE 11 AND
28 USC § 1927; MPA IN SUPPORT; CASE NO. 3:15-cv-00199-LB**                                                    20

Johnson or Franklin –in the hope that the cost of defending such claims will force an unjust and early settlement by Defendants.   Plaintiff's counsel bring these claims with knowledge that Johnson and Franklin are not the wrongdoers.  Plaintiff's counsel bad faith is epitomized in the allegation that:

> AC ¶151.  Between March 4, 1991 and September 1991, these shares were transferred **to an unknown individual**.

> AC ¶152.  On January 16, 1992, BoNY cancelled share certificate number NU-6580, and issued a replacement share certificate **to an unknown individual**.

(Emphasis added.)  However, for the reasons discussed above, Plaintiff's counsel know that Defendants had nothing to do with the transfer of Plaintiff's shares, and Plaintiff's own allegations and admissions suggest that the "unknown individuals" who transacted in his shares included his own friends and/or family members, in return for millions of dollars.

## C.   Plaintiff's Counsel Should Be Sanctioned Under Section 1927

The Court should also award sanctions under 28 U.S.C. § 1927 based on Plaintiff's counsel's unreasonable and vexatious conduct after filing this action, which has unnecessarily prolonged the case and unreasonably increased costs to all parties.

Plaintiff's counsel refused to provide Defendants with critical exculpatory evidence.  On March 11, 2015, following service of the original Complaint, Defendants' counsel, Joseph W. Cotchett ("Cotchett"), sent a letter to lead counsel for Plaintiff, Jeffrey Liddle, requesting copies of documents referred to in Paragraphs 74 through 91 of the draft Complaint that was sent to Franklin in December 2014.  See Declaration of Joseph W. Cotchett ("Cotchett Decl."), ¶2 and **EXHIBIT 1** (March 11, 2015 letter).  The materials were requested as they appeared to completely exculpate Defendants from liability, and contradicted the allegations made in the filed Complaint.

The critical exculpatory evidence requested by Cotchett included the September 29, 1983 letter from the McCarter law firm to Evelyn Miele – Plaintiff's mother, and the Administratrix of Miele Jr.'s Estate and affairs of Miele III, who was originally given the Franklin shares.  According to Paragraph 88 of the draft Complaint (which paragraph was omitted from the

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER RULE 11 AND 28 USC § 1927; MPA IN SUPPORT; CASE NO. 3:15-cv-00199-LB**          21

1  Complaint and Amended Complaint), McCarter attorneys sent the September 1983 letter to

2  Evelyn Miele and enclosed the stock certificates for the Franklin shares in question, along with

3  directions to contact Franklin to request that dividends be sent to her home. Evelyn Miele

4  reportedly signed and returned an acknowledgement of receipt of the share certificates on

5  October 11, 1983. The September 1983 letter is obviously critical in this case, and potentially

6  dispositive of all of Plaintiff's claims, because it confirms the location and possession of the

7  Franklin shares.

8      This evidence also bears on the Amended Complaint's huge factual gap about what

9  happened to Miele III's shares <u>after 1983</u> ("After Miele Jr.'s death, the 4,000 share certificate

10 was held by McCarter & English, the Estate attorneys, either in a safe deposit box opened for the

11 Estate, or at their offices, until the windup of the Estate in 1983." (AC ¶47)). If Plaintiff's

12 counsel knew the true location and disposition of the Franklin shares – *i.e. they were sent to*

13 *Plaintiff's own mother, with directions to update Franklin on the record address* – the sharing of

14 the letter (cited by Plaintiff's counsel in the draft Complaint) would clearly save time for the

15 Court and the parties in resolving this important issue. The letter would also dispel any claim of

16 fraud against Defendants Johnson and Franklin.

17     Rather than produce the documents, Liddle responded and asserted that, according to

18 Rule 26 of the Federal Rules of Civil Procedure, Defendants' request was premature and nothing

19 would be made available. See Cotchett Decl., ¶3 and **<u>EXHIBIT 2</u>** (March 16, 2015 letter).

20 Liddle's letter was followed by a telephone call from attorney David Marek of Liddle &

21 Robinson, who signed the Complaint and Amended Complaint, reiterating that Plaintiff's

22 counsel would not make any documents available to Defendants. *Id.* ¶4.

23     When counsel knows of a material document that may undermine certain causes of action

24 or its entire case, and refuses to produce it, thereby unnecessarily extending the duration of the

25 case, it is cause for sanctions under Section 1927. In fact, courts in the Northern District of

26 California have had no difficulty sanctioning attorneys for exactly this type of conduct. For

27 example, in *Fagundes v. Charter Builders, Inc.*, Judge Jeremy Fogel used Section 1927 to

28 sanction an attorney he found to have unreasonably withheld documents that were dispositive of

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER RULE 11 AND 28 USC § 1927; MPA IN SUPPORT; CASE NO. 3:15-cv-00199-LB**                   22

the defendant's statute of limitations defense.  *Fagundes v. Charter Builders, Inc.*, 2008 U.S. Dist. LEXIS 9617, *11-12 (N.D. Cal. 2008).  In that case, plaintiff's counsel possessed a document that was determinative of the tolling issue, but withheld it because "he believed that simply pleading the date was sufficient and that there was no further need to submit the actual document."  *Id.*  The district court held plaintiff's counsel's refusal to provide the key document was "so unreasonable as to be tantamount to bad faith" and imposed monetary sanctions.  *Id.*

## IV.     CONCLUSION

For the foregoing reasons, Defendants Charles Johnson and Franklin Resources, Inc. respectfully request that this Court: (i) declare that Plaintiff's counsel at Liddle & Robinson, L.L.C., to be in violation of Rule 11 of the Federal Rules of Civil Procedure and 28 USC § 1927; (ii) strike the allegations in the Amended Complaint in their entirety; and (ii) award Defendants monetary sanctions in the amount of the reasonable attorneys' fees and costs they have incurred in defending against Plaintiff's allegations to be determined by the Court.  In the event the Court grants this motion, Defendants will submit a separate request for fees associated with briefing this motion pursuant to Local Rule 54-5(b).

DATED:  May 14, 2015          **COTCHETT, PITRE & McCARTHY, LLP**

By: _____*/s/ Joseph W. Cotchett*_____
                          JOSEPH W. COTCHETT

JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
NANCI E. NISHIMURA (SBN 152621)
nnishimura@cpmlegal.com
MARK C. MOLUMPHY (SBN 168009)
mmolumphy@cpmlegal.com
KEVIN P. O'BRIEN (SBN 215148)
kobrien@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Defendants Charles B. Johnson and Franklin Resources, Inc.*

# APPENDIX A

# APPENDIX A

*Anthony P. Miele, III v. Charles B. Johnson et al.*

On December 4, 2014, Plaintiff's Counsel at Liddle & Robinson, served Franklin with the draft complaint ("draft complaint".)  On April 21, 2015, Liddle & Robinson filed the Amended Complaint ("Amended Complaint".)  A number of revisions and deletions were made to the Amended Complaint.  This chart includes verbatim (1) the most significant material allegations <u>deleted</u> from the draft complaint and not included in the Amended Complaint and (2) the material allegation that was not included in the draft complaint, but <u>added</u> to the Amended Complaint, all of which are critical to the resolution of the case, and demonstrate why the Amended Complaint is frivolous and was filed in bad faith.  *See also* <u>Exhibit E</u> to the Declaration of Maria Gray.

| PLAINTIFF'S AMENDED COMPLAINT | | FRANKLIN DRAFT COMPLAINT | |
|---|---|---|---|
| | DELETED. | **C.** | **McCarter & English Represents the Miele Estate** |
| | DELETED. | ¶74 | On December 5, 1974, a meeting was held at the law firm McCarter & English, LLP, in Newark, New Jersey, regarding Miele Jr.'s Estate.  In attendance were Evelyn Miele, J.P. Miele, and Anthony P. Miele, Sr., (Miele Jr.'s widow, brother and father, respectively), Roger McGlynn, Bob Bohrer, an accountant, and John Drosdick and Jay Poppinga, McCarter & English attorneys. |
| | DELETED. | ¶75 | During this meeting, McCarter & English received a share certificate "in the name of Anthony P. Miele Jr., as Trustee for Anthony P. Miele III" for "Franklin Resources, Inc. (Delaware) ($.10 par) Common Certificate No. NU-02763 for 4,000 shares dated 3/15/73 stamped to show restrictions on transfer."  This certificate, along with other assets, was "to be deposited in safe deposit box of Estate of Anthony P. Miele, Jr." at First National State Bank. |
| | DELETED. | ¶76 | The winding up of Miele Jr.'s Estate was a very long process; in fact the final judgment was not issued by the court until August 16, 1982.  The 4,000 share certificate remained in the safe deposit box until after this date. |

# APPENDIX A

| PLAINTIFF'S AMENDED COMPLAINT | | FRANKLIN DRAFT COMPLAINT |
|---|---|---|
| DELETED. | ¶77 | After the death of Miele Jr., brothers Richard and J.P. Miele took over Miele Jr.'s companies, including Modern Transportation.  J.P. also practiced law with the law firm, Miele and Cooper, located at 160 South Livingston Avenue, Livingston, New Jersey.  The law office was located in a strip mall which J.P. owned. |
| DELETED. | ¶78 | On September 17, 1975, J.P. mailed to Jay Poppinga at McCarter & English correspondence he had received from Franklin, addressed to Anthony P. Miele, Jr. Trustee for Anthony P. Miele, III.  The letter from J.P. was written on the letterhead of J.P.'s law firm.  The letter from Franklin was dated August 26, 1975.  It contained a consolidated statement of income, and was signed by Charles Johnson, President of Franklin. |
| DELETED. | ¶79 | On March 22, 1976 and February 17, 1977, J.P. sent to Jay Poppinga two statements from Franklin which had been addressed to Miele, Jr.  Both letters from J.P. were written on the letterhead of J.P.'s law firm. |
| DELETED. | ¶80 | On July 16, 1976, an unknown individual opened a trust account with The Bank of New York, then transfer agent for Franklin.  The account was in the name Anthony P. Miele Jr. Trustee for Anthony P Miele III, using Miele III's Social Security number.  The address listed was 160 South Livingston Avenue, Livingston, New Jersey 07039-3033, the same address as J.P.'s law firm. |
| DELETED. | ¶81 | According to Franklin's records, the record address listed for Miele III's shares of Franklin was that of Modern Transportation at 75 Jacobus Avenue, South Kearny, NJ 07032 through the date of January 17, 1977.  However, by January 17, 1978, the record address had been changed to the address of J.P.'s law firm, 160 South Livingston Avenue. |

# APPENDIX A

| PLAINTIFF'S AMENDED COMPLAINT | FRANKLIN DRAFT COMPLAINT | |
|---|---|---|
| DELETED. | ¶82 | On April 7, 1982, the Franklin stock split 5-for-4 and issued a $0.10 dividend, resulting in an additional 1,000 shares of Franklin and a $400 dividend being issued to Miele III.  On April 20, 1982, J.P. sent a letter to Poppinga enclosing the $400 dividend check payable to Anthony P. Miele, Jr. Trustee for Anthony P. Miele, III and stock certificate number NU-5497 for 1,000 shares of Franklin in the same name, which he had received. |
| DELETED. | ¶83 | Six days later, Poppinga wrote to Evelyn Miele enclosing the $400 dividend check and stating that he would add the 1,000 share certificate to the safe deposit box.  A notation on the letter states that the 1,000 share certificate was placed in the office safe. |
| DELETED. | ¶84 | On July 26, 1982, Poppinga removed the 4,000 share certificate from the safe deposit box at First National Bank and then held it at McCarter & English. Handwritten notes from a McCarter & English employee in July 1982 show the address and phone number of Franklin, along with the name of Franklin executive Harmon Burns circled above the address. |
| DELETED. | ¶85 | On October 29, 1982, Franklin issued a $0.10 dividend, resulting in a $500 dividend to Miele III based on his 5,000 shares.  On November 2, 1982, J.P. sent this $500 check to Poppinga at McCarter & English, along with a cover letter on his law firm's letterhead.  Poppinga mailed this check to Evelyn Miele on December 16, 1982. |
| DELETED. | ¶86 | Miele III's 1982 minor child tax return reflects the $400 and $500 dividends issued by Franklin.  Miele III's 1981 minor child tax return also reflected the $200 dividend issued by Franklin in that year. |

# APPENDIX A

| PLAINTIFF'S AMENDED COMPLAINT | | FRANKLIN DRAFT COMPLAINT |
|---|---|---|
| DELETED. | ¶87 | On July 5, 1983, the Franklin stock split 2-for-1, resulting in the issuance of certificate number NU-6580 for 5,000 additional shares in the name of Anthony P. Miele, Jr. Trustee for Anthony P. Miele, III.  These shares were deposited in The Bank of New York account which had been opened by an unknown individual on July 16, 1976. |
| DELETED. | ¶88 | On September 29, 1983, Poppinga sent a letter to Evelyn Miele enclosing Franklin stock certificates NU-02763 (for 4,000 shares) and NU-5497 (for 1,000 shares).  Poppinga advised Evelyn that, as changing the registration of the stock to a new custodian would require a court to appoint one, he recommended leaving the registration unchanged until Miele III turned 14, when he could appoint his own custodian, or 18, when he could claim the stock himself.  Poppinga stated that if the dividends from the stock were not being mailed to Evelyn's address, she should write to the company and request that all dividends be sent to her house in North Caldwell, New Jersey.  Evelyn signed the letter stating she received it on October 11. |
| DELETED. | ¶89 | At some point during 1983 to early 1984, J.P.'s law firm moved from its location at 160 South Livingston Avenue. |
| DELETED. | ¶90 | Despite the fact that Miele III should have received $1, 100 in dividends from Franklin in 1983, he did not receive these dividends and no dividends were reflected on Miele III's tax return.  In 1984, Miele III should have received $2, 700 in dividends from Franklin, but there is no record of Miele III receiving these dividends.  Miele III's tax return for 1984 reflects Franklin dividends of $1,355. |

# APPENDIX A

| PLAINTIFF'S AMENDED COMPLAINT | | FRANKLIN DRAFT COMPLAINT |
|---|---|---|
| | DELETED. | ¶91 | An IRS audit in 1992 of Miele III' s tax return for 1989, the year Miele III turned 18, found unreported stock dividends from Franklin totaling $41,250 based on a Form 1099-DN issued by Franklin.  These dividends correspond with the 93,750 shares Miele III should have possessed in 1989.  This Form 1099-DIV was from "Franklin Resources Inc., The Bank of New York," and was issued to Miele III, listing his social security number.  However, Miele III had never received these dividends or Form 1099-DIV, which is why he had not reported them. |
| ¶114 | It was not until March 21, 2014, after months of requests, that Miele III received documents from Franklin revealing the shares and dividends that had been held by BoNY on March 4, 1991, the communications that occurred between BoNY and Franklin Secretary Harmon Burns regarding these shares, and that his shares and dividends had been transferred in September and October 1991. | | NOT IN DRAFT COMPLAINT; ADDED TO AMENDED COMPLAINT EVEN THOUGH CONTRARY TO FACTS ALLEGED IN DRAFT COMPLAINT. |