DAVID M. MAREK (SBN 290686)
dmarek@liddlerobinson.com
JEFFREY L. LIDDLE*
jliddle@liddlerobinson.com
CAITLIN D. BROWN*
cbrown@liddlerobinson.com
LIDDLE & ROBINSON, L.L.P.
220 Geng Road, Suite 2300
Palo Alto, CA 94303
Tel: (650) 900-8500
Fax: (212) 687-1505

Attorneys for Plaintiff
*Admitted Pro Hac Vice

JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
NANCI E. NISHIMURA (SBN 152621)
nnishimura@cpmlegal.com
MARK C. MOLUMPHY (SBN 168009)
mmolumphy@cpmlegal.com
KEVIN P. O'BRIEN (SBN 215148)
kobrien@cpmlegal.com
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Attorneys for Defendants Charles B. Johnson
and Franklin Resources, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ANTHONY P. MIELE III, | Case No. 3:15-cv-00199-LB |
| Plaintiff, | **INITIAL JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER** |
| v. | |
| CHARLES B. JOHNSON and FRANKLIN RESOURCES, INC., | Date: July 23, 2015<br>Time: 9:30 a.m.<br>Courtroom: C, 15th Floor<br>Judge: Hon. Laurel Beeler |
| Defendants. | |

**INITIAL JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER;
CASE NO. 3:15-cv-00199-LB**

The parties to the above-entitled action jointly submit this Initial Joint Case Management Statement & Proposed Order pursuant to the Standing Order for All Judges of the Northern District of California dated November 1, 2014 and Civil Local Rule 16-9.

**1.    Jurisdiction & Service**

This Court has subject matter jurisdiction in this action under 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds $75,000.  Plaintiff Anthony P. Miele, III ("Plaintiff" or "Miele III") is a resident of the state of New York.  Defendant Charles B. Johnson ("Johnson") is a resident of the state of Florida.  Franklin Resources, Inc. ("Franklin") is incorporated in Delaware and maintains its principal place of business in San Mateo, California.  There are no issues regarding personal jurisdiction or venue.  Defendant Johnson was served on January 21, 2015.  Defendant Franklin was served on January 26, 2015.

**2.    Facts**

**A.    Plaintiff's Position**

While Plaintiff has set out the facts in a more detailed manner in his Amended Complaint, the following is a brief summary of the facts.

In the early 1970's, Plaintiff's father, Anthony P. Miele Jr. ("Miele Jr."), provided Defendant Johnson with a loan of $100,000.  Defendant Johnson was the Chief Executive Officer and Chairman of the Board of Franklin for all relevant time periods.  In 1973, Johnson transferred 4,000 shares of common stock of Franklin to Miele Jr., which Miele Jr. held in the name "Anthony P Miele Jr TTEE Anthony P Miele III."  In November 1974, Miele Jr. died when Plaintiff was three years old.  Miele Jr.'s estate was handled by the law firm McCarter & English.  Evelyn Miele had previously been employed by this firm, but had stopped working there before marrying Miele Jr. in 1970.  A successor trustee was not appointed for Miele III's Franklin shares.

In 1983, the address of record for these shares was 160 South Livingstone Avenue, Livingston, New Jersey, the address of the law firm of Plaintiff's uncle.  In late 1983, this law firm moved; the record address, however, remained the same.  In 1989 and 1990, Franklin wrote to The Bank of New York ("BoNY"), Franklin's transfer agent, enclosing mail addressed to

1  Anthony P Miele Jr TTEE Anthony P Miele III at 160 South Livingston Avenue, which had been
2  returned by the post.  On March 4, 1991, BoNY wrote to Franklin, stating that BoNY held
3  uncashed dividend checks from January 13, 1984 to January 15, 1991 totaling $186,496.88, and
4  stock certificates representing 128,125 shares.  BoNY stated that the shareholder's total position
5  was 140,625 shares.
6      According to Johnson, at some point in the late 1980's he learned this property was at
7  risk of "escheating to the state."  Johnson contacted Eugene Mulvihill.  At this point, Mulvihill
8  was a known criminal guilty of repeated financial fraud, and had no affiliation with Franklin.
9  Johnson informed Mulvihill that Plaintiff's share certificates and uncashed dividend checks,
10 worth millions, lay unclaimed at BoNY, and risked escheatment.
11     Neither Johnson nor anyone else ever notified Plaintiff about the existence of his shares
12 and that they faced possible escheatment.  Shortly thereafter, on October 17, 1991, BoNY
13 informed Defendants that Plaintiff's shares were "released to someone" under "puzzl[ing]"
14 circumstances that required further investigation.  Defendants made no bona fide effort to inform
15 Plaintiff that his shares were transferred out of BONY under these circumstances.  At no point
16 did Plaintiff authorize the transfer or release of any shares or dividends of Franklin Resources.
17 The dividend payment address for these shares was later changed to F.N. Wolf & Co., a
18 brokerage firm with strong ties to Mulvihill.
19     Plaintiff learned of the existence of these shares for the first time in summer of 2012,
20 when his sister, Veronica Miele Beard, told Plaintiff that Johnson had communicated with Anson
21 M. Beard, Jr., her father-in-law.  In these communications, Johnson stated that he had transferred
22 4,000 shares of Franklin Resources stock to Miele Jr. in approximately 1973, and that the stock
23 plus dividends would be worth over $200,000,000.  Later, Plaintiff received a page of a Franklin
24 stock ledger from March 1974 which Johnson had sent to Beard Jr., showing 4,000 shares in the
25 name of "Anthony P. Miele, Jr. TTEE Anthony P. Miele, III."   This was the first time Plaintiff
26 ever learned that Franklin shares had been held in trust on his behalf.  It was not until March and
27 April of 2014 that Plaintiff received documents containing key information underpinning
28

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER;    2
CASE NO. 3:15-cv-00199-LB

Plaintiff's claims from Franklin Resources and the New Jersey based law firm of McCarter & English.

While Defendants claim their position regarding the facts is based on documents authored by Plaintiff's counsel, Defendants' description of the facts contains several significant errors and misrepresentations of the facts. Defendants continue to cite a draft complaint which was provided for settlement purposes only, and contains information extraneous to the issues which has not been alleged.

### B.   Defendants' Position

The factual allegations set forth below are based on Plaintiff's Amended Complaint, the Draft Complaint provided by his counsel (but not filed), various declarations that he filed in opposition to Defendants' Motion to Dismiss, and matters from the public record.

In <u>1973</u>, over forty years ago, Defendant Charles Johnson was seeking funds and turned to an acquaintance of his, Eugene Mulvihill. Mulvihill's firm, Mayflower Securities, had underwritten Franklin's initial public offering in 1971. Mulvihill introduced Johnson to Anthony P. Miele Jr. ("Miele Jr."), Mulvihill's long-time family friend. Johnson sold 4,000 shares of Franklin stock to Miele Jr., which were then allegedly registered in the name of his then-infant son, Plaintiff Anthony P. Miele III ("Plaintiff" or "Miele III").

Miele Jr. died in <u>1974</u>. Following his death, and until at least <u>1983</u>, the Franklin stock was continuously held by the Miele family's long-time attorneys, McCarter & English, LLP ("McCarter"), who administered Miele Jr.'s Estate along with Plaintiff's mother, Evelyn Miele, and his uncle, J.P. Miele.

In <u>1976</u>, an "unknown individual" opened an account in the name of Miele Jr. as Trustee for Miele III with Bank of New York ("BoNY"), Franklin's transfer agent, using the address, 160 South Livingston Avenue – the law firm address of <u>J.P. Miele, Plaintiff's uncle</u>, in Livingston, New Jersey.

In <u>1983</u>, McCarter closed the Estate and sent the Franklin share certificate to Evelyn Miele. Mrs. Miele also happened to be employed at McCarter, and worked for the partner who administered her deceased husband's Estate. Notably, McCarter directed Mrs. Miele to keep the

1   account address current with Franklin, and "recommended leaving the registration unchanged

2   until Miele III turned 14, when he could appoint his own custodian, or 18, when he could claim

3   the stock himself." Thus, in 1989, when Plaintiff turned 18, he had the ability to control his

4   Franklin stock. Mrs. Miele returned an acknowledgement of receipt of the stock and the letter

5   from McCarter instructing her on how to protect the shares.

6       Franklin or its then-transfer agent, BoNY, dutifully sent annual reports and proxy

7   statements, paid dividends, and issued additional shares due to stock splits to the account on

8   record, "160 South Livingston address," i.e., the law firm address of <u>J.P. Miele, Plaintiff's uncle</u>,

9   in Livingston, New Jersey. Indeed, J.P. Miele <u>did</u> receive dividend checks and share certificates

10   at this address which, according to Plaintiff, he either cashed or forwarded to the McCarter firm,

11   on Plaintiff's behalf. However, in 1983 or 1984, J.P.'s Miele's law firm <u>moved</u> from its South

12   Livingston address, without notice to Franklin.

13       At some point between <u>1986 and 1989</u>, Plaintiff alleges that "Johnson received a report

14   from BNY, and was told that the shares and dividends in the Miele account were going to be

15   escheated to the State of New Jersey." Johnson then called Mulvihill to help locate Miele Jr.

16   (not knowing that he had passed away), as Mulvihill was a known close friend of Miele Jr. and

17   "was present at [Johnson's] sole meeting [with] Miele Jr." When Johnson spoke with Mulvihill,

18   he learned that Miele Jr. had died. Johnson then asked Mulvihill if he could help locate Plaintiff.

19   It is this purported act – a single phone call, seeking help from Miele family's long-time friend –

20   that forms the crux of alleged liability in the Amended Complaint.

21       In <u>1990</u>, Plaintiff, then 19 years old, met with Mulvihill. According to Plaintiff's

22   counsel, Mulvihill gave Plaintiff documents to sign and, in return of these signed documents,

23   gave Plaintiff $2 million. Plaintiff and his family members have submitted sworn declarations

24   admitting that Mulvihill set up separate trusts for each of them, each with "$250,000 or more."

25   Plaintiff does not describe why he received the money or what he thought it was for. Rather,

26   Plaintiff claims that it wasn't until later, in <u>2012</u>, when he confronted Mulvihill and told him he

27   was unaware of any Franklin stock, that Mulvihill replied, "<u>the money I gave you in 1990</u>."

28

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER;     4
CASE NO. 3:15-cv-00199-LB

1  Not coincidentally, in 1991, soon after his trust was funded by Mulvihill, Plaintiff alleges
2  that his Franklin shares were released and transferred to unknown persons without his
3  authorization.  While Plaintiff never identifies who received his shares, the Amended Complaint
4  alleges that at least some of the "shares and future dividends" were subsequently directed to "FN
5  Wolf, the successor to the assets of Mayflower and First Jersey," i.e., companies run by or
6  affiliated with Mulvihill.
7  In 1992, when Plaintiff was 21, he received an audit letter from the IRS informing him of
8  taxes owed on unreported stock dividends paid by Franklin.  Plaintiff hired a tax accountant, was
9  told the taxes needed to be paid, and paid the taxes.  While Plaintiff now claims he didn't read
10  the IRS letter and didn't realize why he was paying thousands of dollars of taxes, the Franklin
11  dividends described in the IRS letter correspond to the exact number of shares he now claims he
12  knew nothing about.
13  It was not until 2012, twenty years later, that Plaintiff alleges he first learned of his
14  interest in any Franklin stock when Johnson contacted an acquaintance who happened to be the
15  father-in-law of Miele's sister, and asked about the stock.  As alleged, Plaintiff then confronted
16  Mulvihill in October 2012 and demanded that he "explain what had happened with the Franklin
17  stock."  According to Plaintiff, Mulvihill told him that one of his business partners, John
18  Steinbach, had "signed something" for Mulvihill, that J.P. Miele had cashed all of the dividends,
19  and that if Miele III ever investigated the matter, an acquaintance, Robert Brennan, "would hire a
20  Russian hit man to kill [Miele III] and your family."  Ten days after this conversation, Mulvihill
21  died.
22  Despite Mulvihill's admissions, Plaintiff did not sue Steinbach, Brennan, Mulvihill's
23  estate, or his family members, including J.P. Miele.  Much to the contrary, Plaintiff then played
24  with Steinbach in a memorial golf tournament for Mulvihill where, according to Plaintiff,
25  Steinbach confirmed that "Mulvihill 'got money' for Miele III" and that, at Mulvihill's request,
26  "Steinbach had signed something in Miele III's name."
27  **3.    Legal Issues**
28  **A.    Plaintiff's Position**

1. Did Johnson breach fiduciary duties he owed to Plaintiff when he provided Eugene Mulvihill, a felon convicted of multiple frauds, with information regarding Plaintiff's shares and dividends, and relied on Mulvihill to ensure Plaintiff received this property?

2. Was Johnson negligent when he provided Eugene Mulvihill, a felon convicted of multiple frauds, with information regarding Plaintiff's shares and dividends, and relied on Mulvihill to ensure Plaintiff received this property?

3. Did Johnson and/or Franklin fraudulently conceal information by failing to inform Plaintiff of his shares and dividends held unclaimed by BoNY, of the transfer of Plaintiff's shares and dividends, that Johnson had delegated the responsibility for delivering this property to Eugene Mulvihill, and that an investigation into these matters was conducted in 2008?

4. Did Franklin wrongfully register Plaintiff's Franklin shares under Delaware Code § 8-404 when it transferred Plaintiff's shares without an endorsement or instruction from Plaintiff to do so?

5. Is Franklin required to replace Plaintiff's lost, destroyed, or wrongfully take security certificates under Delaware Code § 8-405?

### B. Defendants' Position

1. Whether the Amended Complaint should be dismissed for failure to adequately allege a valid, plausible and timely claim pursuant to Federal Rules of Civil Procedure 12(b)(6).

2. Whether Plaintiff's counsel violated Rule 11(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927 by advancing frivolous legal and factual contentions and omitting known material facts in filing an Amended Complaint.

3. Whether Plaintiff has standing to pursue the claims asserted in the Amended Complaint, is the legal owner of the alleged Franklin shares, is the true legal beneficiary of a valid trust, and whether other parties are required to be joined?

### 4. Motions

The following motions have been decided and/or are pending in this case:

**Title of Motion**                                            **Status**

| | |
|---|---|
| Defendants' Motion to Dismiss Complaint | Denied as moot on April 22, 2015, as Plaintiff filed Amended Complaint prior to hearing on Motion to Dismiss |
| Defendants' Motion to Dismiss Amended Complaint | Pending, hearing set for July 23, 2015 |
| Defendants' Motion for Sanctions under Rule 11 and 28 U.S.C. § 1927 | Pending, hearing set for July 23, 2015 |

### 5. Amendment of Pleadings

Plaintiff does not anticipate amending the Complaint, but reserves the right to amend the Complaint as permitted by the Court and the Federal Rules of Civil Procedure.

Defendants reserve their right to move to dismiss any amended pleading that is filed, as well as to file a cross-complaint in the event the Amended Complaint, or any portion thereof, survives the pending Motion to Dismiss.

### 6. Evidence Preservation

On July 18, 2014, Plaintiff sent letters to Franklin and Johnson instructing each to preserve all evidence related to Plaintiff's claims.

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information. The parties certify that they have taken positive steps to preserve evidence related to the issues presented in this case.

### 7. Disclosures

The parties have agreed to exchange Initial Disclosures in compliance with Federal Rule of Civil Procedure Rule 26 on July 16, 2015.

### 8. Discovery

#### A. Plaintiff's Position

The parties have not yet exchanged discovery excepting Initial Disclosures pursuant to Federal Rule of Civil Procedure Rule 26. Plaintiff anticipates that initial discovery will consist of written discovery, interrogatories, requests to admit, document requests and depositions. Plaintiff believes that electronic discovery will be necessary in this matter, although Plaintiff does not believe electronic discovery will comprise a significant portion of the discovery in this action. The parties have not yet considered entering into a stipulated e-discovery order.

1  Plaintiff notes that Plaintiff's counsel spoke with a substantial number of witnesses in its
2  investigation of this matter.  Additionally, many of these individuals live over 100 miles from the
3  Northern District of California.  Plaintiff anticipates presenting the testimony of certain
4  individuals through deposition.  Plaintiff anticipates requiring more than ten depositions.

5  **B.     Defendants' Position**

6  Discovery should be stayed pending resolution of the pleadings.  Depending on the
7  resolution of the pending Motion to Dismiss, the legal claims and defendants at issue could be
8  curtailed significantly.  Defendants also may ask the Court to proceed with discovery in stages,
9  including initial discovery on potentially dispositive issues.

10 **9.     Class Actions**
11 Not applicable.

12 **10.    Related Cases**
13 To the parties' knowledge, there are no related cases currently pending before any court
14 or administrative body.

15 **11.    Relief**
16 Plaintiff has requested relief in the form of the reissuance of his shares in Franklin
17 Resources, Inc., which currently total 2,531,250 shares.  This calculation is based on stock splits
18 which have occurred after March 4, 1991, when BoNY identified Plaintiff as the beneficial
19 owner of 140,625 shares.  In the alternative, Plaintiff has requested the present value of these
20 shares.  In addition, Plaintiff has requested the dividends which Plaintiff did not receive as a
21 result of Defendants' actions, currently totaling $20,583,450.01.  This amount has been
22 calculated based on the $186,496.88 in dividends held by BoNY on March 4, 1991, as well as all
23 additional dividends which Plaintiff should have received after that date as a result of the
24 dividends issued by Franklin.  Plaintiff also requests pre and post-judgment interest, attorneys'
25 fees and costs, and any other relief this Court deems just and proper.
26 Defendants dispute that Plaintiff is entitled to any relief, including but not limited to the
27 replacement or reissuance of Franklin shares.  Defendants also seek their own relief in the
28

pending Motion for Sanctions.  Defendants reserve their right to add new parties and to seek affirmative relief in a cross-complaint, following the resolution of the Motion to Dismiss.

### 12. Settlement and ADR

The parties discussed ADR during their teleconference on July 1, 2015.  While both parties indicated that mediation may be appropriate, Plaintiff indicated that he was amenable to private mediation at this stage, while Defendants indicated that it was premature to schedule any mediation at this time, pending resolution of the pleadings.  On July 2, 2015, the parties filed a Notice of Need for ADR Phone Conference.  The parties' ADR Phone Conference is scheduled for July 20, 2015.

### 13. Consent to Magistrate Judge for All Purposes

The parties consent to a magistrate judge for all purposes, including trial and entry of judgment.

### 14. Other References

The parties do not believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

### 15. Narrowing of Issues

The parties have not agreed to any stipulations at this time.

### 16. Expedited Trial Schedule

The parties do not believe this case should be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A.

### 17. Scheduling

The parties believe that setting a schedule is premature at this time.

### 18. Trial

Plaintiffs ask that this case be tried to a jury.  Plaintiff estimates that the trial will last approximately 10-15 days.

Defendants believe that it is impossible to estimate the trial length at this early stage, prior to resolution of the Motion to Dismiss.  Based on the present allegations, Defendants estimate that a trial will last 3 weeks.

**19.   Disclosure of Non-Party Interested Entities or Persons**

On April 13, 2015, Defendants' filed their Certification of Interested Entities or Persons, identifying only the parties as having an interest in this litigation. On July 16, 2015, Plaintiff filed his Certification of Interested Entities or Persons, identifying Veronica Miele Beard, Matthew Peter Shaw Miele, and Evelyn Shaw Miele as non-parties having an interest in this litigation.

**20.   Professional Conduct**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21.   Other**

Plaintiff notes his concern that this Joint Case Management Statement was prepared prior to the filing of Defendants' Answer and, as a result, it is more difficult to establish which facts are disputed and where issues could possibly be narrowed.

Dated:  July 16, 2015                           LIDDLE & ROBINSON, L.L.P.

                                       By:   /s/ David M. Marek
                                             David M. Marek (SBN 290686)
                                             Jeffrey L. Liddle*
                                             Caitlin D. Brown*

                                             Liddle & Robinson, L.L.P.
                                             2200 Geng Road, #2300
                                             Palo Alto, CA 94303
                                             Tel: (650) 900-8500
                                             Fax: (212) 687-1505
                                             dmarek@liddlerobinson.com
                                             jliddle@liddlerobinson.com
                                             cbrown@liddlerobinson.com

                                             Attorneys for Plaintiff
                                             *Admitted Pro Hac Vice

Dated:  July 16, 2015                           COTCHETT, PITRE & McCARTHY, LLP

                                       By:   /s/ Mark C. Molumphy
                                             JOSEPH W. COTCHETT (SBN 36324)
                                             jcotchett@cpmlegal.com

1
2
3
4
5
6
7
8
9

NANCI E. NISHIMURA (SBN 152621)
nnishimura@cpmlegal.com
MARK C. MOLUMPHY (SBN 168009)
mmolumphy@cpmlegal.com
KEVIN P. O'BRIEN (SBN 215148)
kobrien@cpmlegal.com

COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Attorneys for Defendants Charles B. Johnson
and Franklin Resources, Inc.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CASE MANAGEMENT ORDER

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions.  [In addition, the Court makes the further orders stated below:]

IT IS SO ORDERED.

Dated: _____

HON. LAUREL BEELER
United States Magistrate Judge

**ECF CERTIFICATION**

I, David M. Marek, in compliance with Civil Local Rule 5-1(i)(3), hereby attest that Defendants' counsel has concurred in this filing.

Dated: July 16, 2015

                                                    LIDDLE & ROBINSON, L.L.P.

                                                    By:___/s/ David M. Marek_____
                                                            David M. Marek (SBN 290686)