UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ANTHONY P. MIELE, III,<br><br>    Plaintiff,<br><br>       v.<br><br>FRANKLIN RESOURCES, INC., et al.,<br><br>    Defendants. | Case No. 3:15-cv-00199-LB<br><br>**ORDER DENYING THE DEFENDANTS' MOTION FOR SANCTIONS**<br><br>[Re: ECF No. 20] |

**INTRODUCTION**

In this diversity case, the plaintiff, Anthony P. Miele III, sued Franklin Resources, Inc. ("Franklin Resources"), an investment management organization, and its former President, Chief Executive Officer, and Chairman of the Board, Charles Johnson, for claims arising out of Franklin Resources's and Mr. Johnson's alleged failure to safeguard Mr. Miele III's shares of Franklin Resources that he asserts were transferred in the 1990s without his consent and which now would be worth approximately $136,000,000. (First Amended Complaint ("FAC"), ECF No. 17.[1]) The court granted in part the defendants' motion to dismiss and dismissed with prejudice all claims except for Mr. Miele III's two statutory claims under Delaware Code §§ 8-404 and 8-405. (8/18/2015 Order, ECF No. 45.) The defendants also filed a motion asking the court to sanction

---

[1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the tops of the documents.

ORDER (No. 3:15-cv-00199-LB)

Mr. Miele III's counsel under Rule 11 for filing a frivolous complaint that was intended to harass them and under 28 U.S.C. § 1927 for vexatious post-filing conduct. (Motion, ECF No. 20.) The court denies the defendants' motion.

**STATEMENT**

Insofar as they apply, the court incorporates by reference the factual and legal discussions in its order granting in part and denying in part the defendants' motion to dismiss. (*See* 8/18/2015 Order, ECF No. 45.) The court adds to the factual discussion in that order the following facts, which are relevant to the defendants' motion for sanctions.

In support of their motion, the defendants submit two documents. The first document is a cover letter that Mr. Miele III's counsel sent to Franklin Resources on December 5, 2015 (about one month before he filed his Original Complaint and instituted this action). (Gray Decl., Ex. E, ECF No. 20-2 at 27-29.) In that letter, which attached a copy of a draft complaint, Mr. Miele III's counsel says that Mr. Miele III is contemplating litigation against Franklin Resources and invites Franklin Resources to negotiate with him to resolve the dispute over Mr. Miele III's shares without litigation. (*Id.*) The defendants highlight the following two paragraphs of the letter:

> The time has come for this matter to be resolved. We are mindful of the possibility that publicly filing this lawsuit may result in the discovery of a substantial amount of information about the history and origin of the claims, which may cast Mr. Johnson, and possibly Franklin [Resources], in an unflattering light. Thus, resolving this matter promptly and privately would be in all parties' best interest. . . .
>
> Please bear in mind that if we do not know affirmatively by close of business on Tuesday that Franklin Resources and Mr. Johnson will join with us and support our attempts to recover Mr. Miele[ III]'s stock and unpaid dividends, we expect to proceed with next stages which may include forwarding demands to BoNY, Bank of New York Mellon, and Computershare, as well as litigation. In the event we learn that culpability resides in Johnson or Franklin we expect to pursue our client's claims vigorously unless settled earlier.

(*Id.* at 28-29.)

The second document is the draft complaint that Mr. Miele III's counsel attached to the cover letter. (Gray Decl., Ex. E, ECF No. 20-2 at 30-64 ("DC").) The draft complaint contains allegations that Mr. Miele III did not include in the complaints he later filed: the Original Complaint and the First Amended Complaint. Among the omitted allegations are the following.

ORDER (No. 3:15-cv-00199-LB)

2

In December 1974, Evelyn Miele (Mr. Miele III's mother), J.P. Miele (Mr. Miele III's uncle), and Anthony Miele Sr. (Mr. Miele III's grandfather) met with their accountant and attorneys from McCarter & English regarding the Miele Jr. Estate. (DC ¶ 74.) During this meeting, McCarter & English received the 4,000-share stock certificate in the name of "Anthony P. Miele Jr. TTEE Anthony P. Miele III." (*Id.* ¶ 75.) The stock certificate was kept in a safety deposit box opened for the Miele Jr. Estate until after 1982, when the Miele Jr. Estate was wound up. (*Id.* ¶ 76.)

After Mr. Miele Jr. died, his two brothers, Richard Miele and J.P. Miele, took over his businesses. (*Id.* ¶ 77.) In 1975, J.P. Miele mailed to an attorney at McCarter & English a letter he received from Franklin Resources which was addressed to Mr. Miele Jr. as trustee for Mr. Miele III. (*Id.* ¶ 78.) The letter was a consolidated statement of income. (*Id.*) In 1976 and 1977, J.P. Miele sent to the attorney at McCarter & English two more statements from Franklin Resources which had been addressed to Mr. Miele Jr. (*Id.* ¶ 79.)

In 1976, an unknown individual opened a trust account with BoNY. (*Id.* ¶ 80.) The account was opened in the name of "Anthony P. Miele Jr. TTEE Anthony P. Miele III," using Mr. Miele III's Social Security number. (*Id.*) The address associated with the account was that of J.P. Miele's law firm. (*Id.*)

Between 1977 and 1978, the record address listed for the 4,000 shares of Franklin Resources owned by "Anthony P. Miele Jr. TTEE Anthony P. Miele III" was changed from the address for one of Mr. Miele Jr.'s businesses to the address for J.P. Miele's law firm. (*Id.* ¶ 81.)

In 1982, J.P. Miele sent a letter to the attorney at McCarter & English enclosing a dividend check payable to "Anthony P. Miele Jr. TTEE Anthony P. Miele III" and a stock certificate for 1,000 shares of Franklin Resources, which has been issued pursuant to a stock split. (*Id.* ¶ 82.) The attorney at McCarter & English then mailed the check to Ms. Miele and also told her that it would add the 1,000-share stock certificate to the safety deposit box containing the 4,000-share stock certificate. (*Id.* ¶ 83.) Later that year, J.P. Miele sent another dividend check payable to "Anthony P. Miele Jr. TTEE Anthony P. Miele III" to the attorney at McCarter & English. (*Id.* ¶ 85.) The attorney then mailed the check to Ms. Miele. (*Id.*) Mr. Miele III's minor-child tax return for 1982 reflected the two dividend checks issued by Franklin Resources. (*Id.* ¶ 86.)

ORDER (No. 3:15-cv-00199-LB)

3

1    In 1983, due to a stock split, Franklin Resources issued a 5,000-share stock certificate to
2    "Anthony P. Miele Jr. TTEE Anthony P. Miele III." (*Id.* ¶ 87.) The "shares" were deposited in the
3    BoNY account opened in 1976 for "Anthony P. Miele Jr. TTEE Anthony P. Miele III." (*Id.*) Later
4    in 1983, the attorney at McCarter & English sent a letter to Ms. Miele dated September 29, 1983,
5    which enclosed the 4,000-share and 1,000-share stock certificates that had been held in a safety
6    deposit box by McCarter & English until then. (*Id.* ¶ 88.) The attorney told Ms. Miele that
7    changing the registration of the stock to a new custodian would require a court to appoint a new
8    one, and he recommended leaving the registration unchanged until Mr. Miele III turned 14 years
9    old, when he could appoint his own custodian, or until Mr. Miele III turned 18 years old, when he
10   could claim the shares himself. (*Id.*) The attorney also told Ms. Miele that if the dividends from
11   the shares were not already being mailed to her address, she should write to Franklin Resources
12   and request that all dividends be sent there. (*Id.*) Ms. Miele acknowledged receiving this letter on
13   October 11, 1983. (*Id.*)
14   At some time during 1983 or 1984, J.P. Miele's law firm moved from its location. (*Id.* ¶ 89.)
15   In 1983, Mr. Miele III should have received $1,100 in dividends from Franklin Resources, but
16   he did not, and no dividends were listed on his minor child tax return for that year. (*Id.* ¶ 90.) In
17   1984, Mr. Miele should have received $2,700 in dividends from Franklin Resources, but he did
18   not, and his minor child tax return listed only $1,355 in dividends. (*Id.*)
19   In 1992, the IRS audited Mr. Miele III's tax return for 1989, the year that he turned 18 years
20   old. (*Id.* ¶ 91.) Based on a Form 1099-DIV from Franklin Resources and issued to Mr. Miele III,
21   the IRS found that Mr. Miele had not reported $41,250 in dividends from Franklin Resources. (*Id.*)
22   These dividends correspond to the 93,750 shares of Franklin Resources that Mr. Miele should
23   have owned in 1989. (*Id.*) Mr. Miele III, however, never received the $41,250 in dividends or the
24   Form 1099-DIV, which is why he did not report them on his 1989 tax returns. (*Id.*)
25   The defendants also submit declarations describing oral statements that Mr. Miele III's counsel
26   made. Mr. Miele III's counsel made the first statement on May 17, 2013. (Gray Decl., ¶ 5, ECF
27   No. 20-2 at 2-3.) He told Franklin Resources's vice president and secretary that when Mr. Miele
28   III was 18 or 19 years old, Mr. Mulvihill went to the Miele house to meet with Mr. Miele III. (*Id.*)

ORDER (No. 3:15-cv-00199-LB)

4

1  During the meeting, Mr. Mulvihill presented Mr. Miele III with some documents to sign. (*Id.*) In
2  return for signing the documents, Mr. Mulvihill gave Mr. Miele III $2,000,000. (*Id.*) Mr. Miele
3  III's counsel also said that when Mr. Mulvihill died, his estate was worth at least $49,000,000.
4  (*Id.*) Finally, Mr. Miele III's counsel also stated that he believed the stock certificates for Mr.
5  Miele III's shares were "put into street name with Prudential Bache Securities in 1989." (*Id.*)

6  Mr. Miele III's counsel made the second statement on May 7, 2015, during counsels' meet-
7  and-confer for this motion for sanctions. The defendants' counsel says that Mr. Miele III's counsel
8  stated:

- After the death of Mr. Miele Jr., Mr. Mulvihill, who was a close friend and business acquaintance of Mr. Miele Jr., took Mr. Miele III "under his wing" and acted as his "surrogate father."
- In 1990, Mr. Mulvihill met with the Miele family and provided an undisclosed amount of money to them, including to Mr. Miele III.
- In 1992, when Mr. Miele III was 21 years old, the IRS audited Mr. Miele III's 1989 tax returns and found that he had not reported $41,250 in dividends from Franklin Resources. Mr. Miele III was aware of the audit in 1992 and had asked Mr. Mulvihill for advice. Mr. Mulvihill sent Mr. Miele III to an accountant named "Goldberg," who advised Mr. Miele III to pay the taxes owed if he had the money to do so. Mr. Miele III paid the taxes owed.

19  (Cotchett Decl., ¶ 6, ECF No. 20-1 at 3.)

## ANALYSIS

21  When a district court decides to impose sanctions or discipline, it must clearly delineate under
22  which authority it acts to insure that the attendant requirements are met. *Weissman v. Quail Lodge,*
23  *Inc.*, 179 F.3d 1194, 1200 (9th Cir. 1999) (citing *Keegan Management Co. Sec. Litig.*, 78 F.3d
24  431, 435 (9th Cir. 1996) ("For a sanction to be validly imposed, the conduct must be sanctionable
25  under the authority relied on.") (internal quotation marks and citation omitted)). "The imposition
26  of sanctions requires a statement of reasons for the district court's action, including the need for
27  the particular sanctions imposed." *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1081 (9th Cir.
28  2000) (citing *G.J.B. & Assocs., Inc. v. Singleton*, 913 F.2d 824, 830 (10th Cir. 1990) ("If the

1 district court ultimately imposes sanctions, detailed findings are necessary to identify the

2 objectionable conduct and provide for meaningful appellate review.")).

The defendants' seek sanctions against Mr. Miele III's counsel under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. The court's decision whether to impose sanctions under Rule 11 or section 1927 lies within its discretion. *See Islamic Shura Council of Southern California v. F.B.I.*, 757 F.3d 870, 872 (9th Cir. 2014) (Rule 11 sanctions); *Gomez v. Vernon*, 255 F.3d 1118, 1135 (9th Cir. 2001) (section 1927 sanctions). The court exercises its discretion and denies the defendants' motion.

**I. RULE 11**

The defendants first argue that Mr. Miele III's counsel should be sanctioned under Rule 11 because Mr. Miele III's complaints are "frivolous." (Motion, ECF No. 20 at 17-25.) Rule 11 provides in pertinent part:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.
>
> (c) Sanctions.
>
> (1) In General. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.
>
> . . . .

1    In applying this rule, the Ninth Circuit "has identified two circumstances in which sanctions
2    [under Rule 11] are appropriate: [(1)] where a litigant makes a 'frivolous filing,' that is, where he
3    files a pleading or other paper which no competent attorney could believe was well grounded in
4    fact and warranted by law; and [(2)] where a litigant files a pleading or other paper for an
5    'improper purpose,' such as personal or economic harassment." *Greenberg v. Sala*, 822 F.2d 882,
6    885 (9th Cir. 1987) (citing *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531,
7    1538 (9th Cir. 1986) and *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830-32 (9th Cir. 1986));
8    *see Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990).

"Where a *complaint* is in question, the 'improper purpose' analysis is not necessary because a non-frivolous complaint cannot be said to be filed for an improper purpose." *Greenberg*, 822 F.2d at 885 (italics in original) (citing *Golden Eagle*, 801 F.2d at 1538, and *Zaldivar*, 780 F.2d at 832); *cf. In re Itel Sec. Litig.*, 791 F.2d 672, 675 (9th Cir. 1986) (papers other than complaints may be filed for an improper purpose even though they are not frivolous).[2] Thus, only the "frivolous" analysis is necessary when determining whether a complaint subjects a party or attorney to Rule 11 sanctions.

"The word 'frivolous' does not appear anywhere in the text of [Rule 11]; rather, it is a shorthand that [the Ninth Circuit] has used to denote a filing that is *both* baseless *and* made without a reasonable and competent inquiry." *Townsend*, 929 F.2d at 1362 (italics added); *see*

---

[2] The Ninth Circuit has explained the reason for this distinction between complaints and other papers thusly:

> With regard to complaints which initiate actions, we have held that such complaints are not filed for an improper purpose if they are non-frivolous. Since subjective evidence of the signer's purpose is to be disregarded, the "improper purpose" inquiry subsumes the "frivolousness" inquiry in this class of cases. The reason for the rule regarding complaints is that the complaint is, of course, the document which embodies the plaintiff's cause of action and it is the vehicle through which he enforces his substantive legal rights. Enforcement of those rights benefits not only individual plaintiffs but may benefit the public, since the bringing of meritorious lawsuits by private individuals is one way that public policies are advanced. As we recognized in *Zaldivar*, it would be counterproductive to use Rule 11 to penalize the assertion of non-frivolous substantive claims, even when the motives for asserting those claims are not entirely pure.

*Townsend*, 929 F.2d at 1362 (footnote and internal citations omitted).

1    *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005). The Ninth Circuit thus has made clear that

2    "[w]here . . . the complaint is the primary focus of Rule 11 proceedings, a district court must

3    conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually

4    'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and

5    competent inquiry' before signing and filing it." *Christian v. Mattel, Inc.*, 286 F3d 1118, 1127 (9th

6    Cir. 2002) (citing *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997)). This two-part

7    frivolousness inquiry is conjunctive, which means that an attorney may not be sanctioned for filing

8    a complaint that is not well-founded, so long as she conducted a reasonable inquiry, and an

9    attorney also may not be sanctioned for a complaint which is well-founded, solely because she

10   failed conduct a reasonable inquiry. *In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 434 (9th Cir.

11   1996)).

12   A party moving for Rule 11 sanctions bears the burden to show why sanctions are justified.

13   *See Tom Growney Equip., Inc. v. Shelley Irr. Dev., Inc.*, 834 F.2d 833, 837 (9th Cir. 1987). The

14   Ninth Circuit has stated that Rule 11 sanctions are "an extraordinary remedy, one to be exercised

15   with extreme caution." *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir.

16   1988). Accordingly, they are reserved for "rare and exceptional case[s] where the action is clearly

17   frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose."

18   *Id.* at 1344. To hold otherwise "would imply that attorneys in general should exercise little, if any,

19   creativity in their representation of clients, that they should not argue for new but plausible

20   interpretations of agreements, and that they should not read ambiguous cases in the way most

21   favorable to their clients." *Id.* "Rule 11," in other words, "must not be construed so as to conflict

22   with the primary duty of an attorney to represent his or her client zealously." *Id.*

23   The defendants argue that the claims[3] in Mr. Miele III's First Amended Complaint all are

24   legally or factually baseless from an objective perspective for the reasons they set forth in their

25   motion to dismiss. (Motion, ECF No. 20 at 19.) This argument is unpersuasive. Although the court

---

[3] The parties and the court look to whether any claim, rather than the First Amended Complaint as a whole, is frivolous because Ninth Circuit "has held that 'the mere existence of one non-frivolous claim' in a complaint does not immunize it from Rule 11 sanctions." *Holgate*, 425 F.3d at 677 (quoting *Townsend*, 929 F.2d at 1364).

ORDER (No. 3:15-cv-00199-LB)

8

1  did in fact grant the defendants' motion with respect to most of Mr. Miele III's claims, it denied
2  the motion with respect to others. And the fact that the court dismissed most of Mr. Miele III's
3  claims does not mean that they were legally or factually baseless. *Operating Eng'rs*, 859 F.2d at
4  1344 ("The simple fact that an attorney's legal theory failed to persuade the district court 'does not
5  demonstrate that [counsel] lacked the requisite good faith in attempting to advance the law.'")
6  (quoting *Hurd v. Ralphs Grocery Co.*, 824 F.2d 806, 811 (9th Cir. 1987)).

7  First, the court concluded that the applicable two-year statute of limitations barred Mr. Miele
8  III's negligence and negligent-prevention-of-assistance claims. The court found Mr. Miele III's
9  arguments that these claims did not accrue until March or April 2014 to be unpersuasive, but it did
10  not find them to be objectively baseless.

11  Second, though the court dismissed Mr. Miele III's breach-of-fiduciary-duty and fraudulent-
12  concealment claims for failure to state a claim, the court does not think they were baseless. Mr.
13  Miele III's breach-of-fiduciary-duty claim against Franklin Resources turned in part on whether
14  Delaware or California law applied. Mr. Miele III failed to state a claim against Mr. Johnson for
15  breach of his fiduciary duty of care because Mr. Johnson's actions, as a matter of law, did not
16  involve a business decision. That does not mean that Mr. Miele III's counsel's position that Mr.
17  Johnson's actions did involve a business decision was baseless. The court also determined that Mr.
18  Johnson did not breach his fiduciary duty of loyalty because he did not engage in self-dealing or
19  intentionally act contrary to Franklin Resources's interests, intentionally violate the law, or
20  consciously disregard his known duties. Again, even though the court was not persuaded by Mr.
21  Miele III's arguments, they were not baseless. Finally, as for Mr. Miele III's fraudulent-
22  concealment claim, it failed because the court concluded that the defendants did not have a duty to
23  disclose the allegedly concealed information to him. This claim was not baseless, either.

24  The defendants nonetheless argue that even if Mr. Miele III's claims are not legally and
25  factually baseless based on the allegations in the First Amended Complaint, they are if the court
26  considers the draft complaint and Mr. Miele III's counsel's oral statements. The court does not
27  agree, at least not at this stage in the litigation.

28  The defendants' argument turns in part on the allegations in the draft complaint that Mr. Miele

ORDER (No. 3:15-cv-00199-LB)

9

1  III's mother and uncle knew about the shares, received the stock certificates and dividends, and
2  never registered the shares with a successor custodian (despite knowing about this issue from the
3  attorney from McCarter & English). These allegations do not demonstrate that Mr. Miele III knew
4  about the shares. More saliently, the defendants say that Mr. Miele knew about the shares at least
5  as early as 1992, when the IRS audited him and found him liable for taxes on dividends from the
6  shares. If true, the defendants argue that this establishes that all of his claims are barred by the
7  statute of limitations. This could be a good argument. The court nonetheless is reluctant at this
8  stage of the case to impose sanctions based on a draft complaint that Mr. Miele III never filed.
9  Discovery has not started, and a record about the audit and Mr. Miele III's knowledge has not yet
10 been made. A similar problem exists with the defendants' third argument: Mr. Miele knew about
11 the shares when Mr. Mulvihill paid him $2,000,000 around 1990. But it is not just the lack of a
12 record; even if the allegation is true, it is not clear that Mr. Miele III knew what this payment was
13 for. The court cannot conclude that it was for the shares. Moreover, even if Mr. Miele III had
14 knowledge of the shares' existence, his claims accrued when he had reason to suspect that he had
15 been harmed by wrongdoing. *See Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (Cal.
16 2005). Simply knowing that some shares exist might or might not, depending on the context,
17 provide that reason.

18 The defendants also focus on Mr. Miele III's counsel's statement in the cover letter that, "[i]n
19 the event we learn that culpability resides in [Mr.] Johnson or Franklin [Resources] we expect to
20 pursue our client's claims vigorously unless settled earlier." The defendants ask the court to
21 interpret this statement as an admission by Mr. Miele III's counsel that he did not have any
22 evidence of the defendants' culpability. At this stage, the court is not willing to interpret a
23 statement in a letter between counsel so strictly.

24 The court has considered all of the defendants' arguments and understands their perspective
25 that Mr. Miele III's claims did not suggest a plausible right to relief against them and his counsel
26 omitted and ignored information yet loaded the Original Complaint and First Amended Complaint
27 with inflammatory allegations. Nonetheless, on this record, the court does not believe that Mr.
28

1   Miele III's counsel should be sanctioned under Rule 11.[4]

2   **II. 28 U.S.C. § 1927**

3   28 U.S.C. § 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions imposed under section 1927 may be imposed only based on activities before the sanctioning court. *GriD Sys. Corp. v. John Fluke Mfg. Co., Inc.*, 41 F.3d 1318, 1319 (9th Cir. 1994) (per curiam). They also "must be supported by a finding of subjective bad faith." *In Re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d at 436 (citations and quotation marks omitted). Such "[b]ad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Id.* When awarding sanctions under section 1927 (or pursuant to the court's inherent authority), district courts have discretion in determining whether sanctions are appropriate and, if so, in what amount. *Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995); *F.J. Hanshaw Enterprises, Inc. v. Emerald River Development, Inc.*, 244 F.3d 1128, 1135 (9th Cir. 2001).

The defendants' move for sanctions under section 1927 because Mr. Miele III's counsel refused to give them two allegedly exculpatory documents. (Motion, ECF No. 25; Reply, ECF No. 32 at 19.[5]) After seeing the draft complaint, the defendants' counsel asked Mr. Miele III's counsel for copies of documents referenced in paragraphs 74 through 91 of it. (Cotchett Decl., Ex. 1, ECF No. 20-1 at 6.) In particular, he asked for a copy of the September 29, 1983 letter that an attorney at McCarter & English sent to Ms. Miele. (*Id.*) According to paragraph 88 of the draft complaint,

---

[4] The defendants' additional arguments regarding Mr. Miele III's failure to conduct a reasonable pre-filing investigation are inapposite in light of the court's conclusion that Mr. Miele III's claims were not baseless. *See In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d at 434 ("May [an attorney] be sanctioned for a complaint which is well-founded, solely because she failed to conduct a reasonable inquiry? We conclude the answer is no.").

[5] The defendants confirm this in their reply, which is important because the Ninth Circuit has repeatedly held that section 1927 does not apply to the filing of a complaint. *In Re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d at 435 (citing cases).

ORDER (No. 3:15-cv-00199-LB)

11

the letter enclosed the 4,000-share and 1,000-share stock certificates and advised Ms. Miele to leave the certificates' registration unchanged until Mr. Miele III turned 14 years old, when he could appoint his own custodian, or until Mr. Miele III turn 18 years old, when he could claim the shares himself. (DC ¶ 88.) In that letter, the attorney also told Ms. Miele that if the dividends from the shares were not already being mailed to her address, she should write to Franklin Resources and request that all dividends be sent there. (*Id.*) The defendants' counsel also asked Mr. Miele III's counsel for a copy of the acknowledgement of receipt that, again according to paragraph 88 of the draft complaint, Ms. Miele signed on October 11, 1983. (Cotchett Decl., Ex. 1, ECF No. 20-1 at 6.) In response, Mr. Miele III's counsel told the defendants' counsel that the request for these documents was premature because a conference under Rule 26(f) had not yet occurred. (*Id.*, Ex. 2, ECF No. 20-1 at 8.)

Citing a single district court opinion—*Fagundes v. Charter Builders, Inc.*, No. C 07-1111, 2008 WL 268977 (N.D. Cal. Jan. 29, 2008)—the defendants argue that Mr. Miele III's counsel's refusal to provide copies of these documents before discovery has commenced is sanctionable under section 1927 because Mr. Miele III withheld documents that "could expedite and potentially resolve the issues before" the court. (Reply, ECF No. 32 at 19.) *Fagundes*, however, is distinguishable from the circumstances here. In that case, the plaintiff alleged in her original complaint that she had filed a complaint with HUD notifying it of Fair Housing Act violations on July 25, 2003, but she did not provide, either along with her original complaint or her opposition to the defendants' motion to dismiss her original complaint, any documentary evidence to support her allegation. *Fagundes*, 2008 WL 268977, at *1. The defendants, on the other hand, produced in support of their motion, a HUD complaint that she filed on September 16, 2003. *Id.* This mattered because the applicable statute of limitations was tolled once the plaintiff notified HUD of the violations. *See id.* Based on the evidence before it, the district court found that the plaintiff's claims were time-barred because the tolling period did not start until September 16, 2003. *Id.* Because the plaintiff might have been able to amend her complaint to sufficiently allege a claim, the court gave her leave to do so. *Id.*

She did. *Id.* at *2. She once again alleged that she filed a HUD complaint on July 25, 2003,

1   and this time she attached the July 25, 2003 HUD complaint to her first amended complaint. *Id.* at

2   *2; *see also Fagundes v. Charter Builders, Inc.*, No. C 07-1111, ECF No. 59 (Aug. 20, 2007). The

3   defendants moved to dismiss the plaintiff's first amended complaint on statute of limitations

4   grounds. *Fagundes*, 2008 WL 268977 at *3. The court denied the defendants' statute of limitations

5   argument, concluding that, assuming the July 25, 2003 HUD complaint was authentic, the

6   plaintiff's claims were timely. *Id.* But the court also sanctioned the plaintiff's counsel under

7   section 1927 for multiplying the proceedings unreasonably. *Id.* at *4. The court stated:

> At oral argument, the Court sought an explanation from Plaintiff's counsel as to why the July 25 document was not offered previously. Counsel responded that he believed that simply pleading the date was sufficient and that there was no further need to submit the actual document. The Court finds this explanation objectively unreasonable. At the hearing on the first motion to dismiss in July 2007, the Court informed counsel explicitly that it would consider any documentary evidence that Plaintiff could provide demonstrating that her complaint was filed before September 16, 2003. In light of the fact that Plaintiff's earlier pleadings did contain a copy of the September 16 complaint, it is very difficult to understand how counsel could not have recognized the importance of submitting a copy of the July 25 document as well. As a direct result of counsel's failure to provide the latter document, Defendant has been forced to relitigate an issue that easily could have been resolved.

15  *Id.* The court heard oral argument on the first motion to dismiss on July 13, 2007 but did not issue

16  its order granting the motion until July 20, 2007, which gave the plaintiff's counsel one week to

17  take the court up on its invitation and provide the July 25, 2003 HUD complaint, which would

18  have resolved the issue then and there. *See Fagundes v. Charter Builders, Inc.*, No. C 07-1111,

19  ECF No. 55 (July 13, 2007) (hearing minute order).

20      Nothing like what happened in *Fagundes* has happened here. First, the court has not explicitly

21  invited or required Mr. Miele III's counsel to provide any documents to it. Second, unlike in

22  *Fagundes*, it is not entirely clear that the documents the defendants' counsel wants now would

23  definitively solve the issue. In *Fagundes*, the parties fully briefed the statute of limitations issue,

24  and the court fully considered it. Based on the documents it had, the court came out in favor of the

25  defendants. Had the plaintiff simply provided the July 25, 2007 HUD complaint to the court, the

26  court would have come out in favor of the plaintiff. Not providing it required another round of full

27  briefing and another hearing and order. This is not the case here.

28      In sum, the court cannot conclude on this record that Mr. Miele III's counsel has unreasonably

ORDER (No. 3:15-cv-00199-LB)

13

1  and vexatiously multiplied the proceedings by making the defendants' counsel wait until
2  discovery opens to obtain documents relevant to this action. The court denies the defendants'
3  motion for sanctions under section 1927.

## CONCLUSION

The court denies the defendants' motion for sanctions. This disposes of ECF No. 20.

**IT IS SO ORDERED.**

Dated: August 18, 2015

_____
LAUREL BEELER
United States Magistrate Judge

ORDER (No. 3:15-cv-00199-LB)

14